**TEXAS & PACIFIC RAILWAY COMPANY,**
**Appellant,**

v.

**Vera DAVIS et al., Appellee.**

**No. 5588.**

Court of Civil Appeals of Texas.

El Paso.

Dec. 18, 1963.

Rehearing Denied Jan. 15, 1964.

McDonald Shafer, Gilliland & Davis, Paul McCollum, Odessa, Hill D. Hudson, Pecos, for appellant.

John J. Watts, Odessa, for appellee.

CLAYTON, Justice.

This is a railroad crossing case in which appellant appeals from an adverse judgment granted appellees for damages and injuries arising from a collision between a tractor and tank semi-trailer being driven by one Carl Davis (who was killed) and a passenger train of the defendant company at a crossing in Odessa, Texas on February 5, 1959. Trial was to a jury on special issues, upon the answers to which the trial court founded its judgment.

Appellant based its appeal on five "propositions", the first four of which will be considered together, and are as follows:

### "FIRST PROPOSITION

"Where the Court required an affirmative answer to four (4) separate issues under Section 86 of Article 6701d of the Revised Statutes of Texas as a condition of the jury's answer to an inquiry as to whether deceased's negligence was a proximate cause of the collision in question. Such conditional submission of Special Issue No. 67 placed an undue burden upon the Defendant and constituted error.

### "SECOND PROPOSITION

"The Court's refusal to submit to the jury proper requested material issues raised by both pleadings and evidence. constituted error.

## "THIRD PROPOSITION

"Overruling of Defendant's Motion of Judgment, after jury had found all essential facts to support complete defense was error.

## "FOURTH PROPOSITION

"Failure to submit requested Special Issues constituting if answered, favorably to Defendant, a complete defense, constituted error."

The fifth proposition sets out that where deceased approached from the south side of a crossing, the trial court's inquiry of the jury as to the condition of appellant's signal lights should have been limited to the view from the south side.

Article 6701d, Section 86, T.R.C.S., referred to in appellant's first proposition, in so far as it is relevent hereto, reads as follows:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

"(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train; * * *

"(c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard;

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

The deceased apparently did not stop.

In Appellant's first amended original answer, in Section V thereof, there were set out numerous acts of the deceased which were alleged to have been negligence on his part and which, individually and collectively, are alleged to be the proximate cause or causes of the collision in question, including that "he failed to stop his motor vehicle within 50 feet but not closer than 15 feet to the nearest rail of said track at a time when the engine constituted an immediate hazard clearly visible to a person using ordinary care." The appellant also submitted several requested special issues and instructions to the jury, among them the following:

### "SPECIAL ISSUE NO. SIXTEEN

"Do you find from a preponderance of the evidence that the train was plainly visible before plaintiff's vehicle reached a point fifteen feet from the nearest rail of the track upon which the train was approaching?

"In connection with your answer to this special issue you are instructed that the train was plainly visible, if it was, when a reasonably prudent person situated as was the plaintiff, should have seen it in the exercise of ordinary care for his own safety, under all the facts and circumstances as shown by the evidence."

### "SPECIAL ISSUE NO. SEVENTEEN

"Do you find from a preponderance of the evidence that the train was in hazardous proximity to the crossing in question before the plaintiff reached a point fifteen feet from the nearest rail of the track upon which the train was approaching?

"In connection with your answer to this special issue you are instructed that the defendant's train was in 'Hazardous proximity' to the crossing, if it was, when under all the surrounding facts and circumstances in evidence and speed and nearness of the train was such that a reasonably prudent person situated as was the plaintiff should have

known that an attempt to proceed over the crossing ahead of the train was hazardous."

The appellant then follows these requested special issues and instructions with its requested Special Issue No. Seventeen A, which inquires of the jury whether, from a preponderance of the evidence, the failure of the deceased to stop his vehicle within fifty feet, but not less than fifteen feet, from the nearest rail of the track upon which the train was approaching was the proximate cause of the collision. These requested special issues and instructions were in the language of special issues suggested by the now Chief Justice Calvert of the Supreme Court in his article on special issues under the statute herein involved in 34 Texas Law Review 971.

■ The court, in Special Issues Nos. 61 and 62, submitted the requested Special Issues Nos. Sixteen and Seventeen in the exact language requested, and the jury answered them in the affirmative. But the court then followed these special issues with Special Issues Nos. 65 and 66, reading as follows:

### "SPECIAL ISSUE NO. 65

"Do you find from a preponderance of the evidence that the train emitted an audible signal within approximately fifteen hundred feet before Carl Davis reached a point fifteen feet from the nearest rail of the track upon which the train was approaching?

### "SPECIAL ISSUE NO. 66

"Do you find from a preponderance of the evidence that a clearly visible electric or mechanical signal device gave warning of the immediate approach of the defendant's train immediately prior to the collision in question?

The trial court then gave the following instruction and special issue:

"If you have answered Special Issues No. 61, 62 65 and 66 'Yes', and only

in that event, then answer Special Issue No. 67.

### "SPECIAL ISSUE NO. 67

"Do you find from a preponderance of the evidence that the failure of Carl Davis to stop his vehicle within fifty feet, but not less than fifteen feet from the nearest rail of the track upon which the train was approaching, was a proximate cause of the collision?"

The jury answered Special Issues Nos. 65 and 66 in the negative, and thus was prohibited, under the court's instruction, from answering Special Issue No. 67. Appellant timely objected and excepted to this grouping of special issues in the court's charge and the court's instruction to the jury making the answer of Special Issue No. 67 conditional upon an affirmative answer to Special Issues Nos. 61, 62, 65 and 66, as an improper grouping of issues relating to two separate and distinct statutory theories of defense and as imposing upon the appellant a far greater burden in establishing its defense predicated upon its pleadings and its requested special issues, as raised by the evidence, than required by either statutory or case law in Texas. Our view of the statute (Art. 6701d, Sec. 86), is that it intends to set out several distinct and separate conditions under each of which the duty arises for the driver of a motor vehicle approaching a railroad grade crossing to stop within the prescribed distance from the nearest rail. One of these conditions, subsection (d), is when an approaching train is plainly visible and is in hazardous proximity to such crossing. The existence of this condition was submitted to the jury in Special Issues Nos. 61 and 62. Another, unrelated, condition requiring the stop, i. e. subsection (c), is when a railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard. The existence of this condition was probably intended to be submitted in Special

Issue No. 65. A third, unrelated, condition requiring the stop, i. e. subsection (a), is when a clearly visible electric or mechanical signal device gives warning of the immediate approach of a train. The existence of this condition is submitted in Special Issue No. 66. The jury answered that neither of the conditions referred to in Special Issues Nos. 65 and 66 existed under the evidence. In order to establish the existence of any one of these three conditions it is not necessary also to establish the existence of either of the other two. Appellees, in their second counter-point in reply to appellant's first, second, third and fourth propositions, makes the assertion that "all statutory conditions must exist under Article 6701-D, Section 86, Revised Civil Statutes of Texas, before a duty to stop exists." This statement is unquestionably true when it is applied to subsection (d) of Section 86, Article 6701d, to which it should refer. In support of their assertion appellees cite from the Supreme Court case of Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, in which the then Justice Calvert, writing the majority opinion, sets out the following:

> "Further analyzing the statute, it appears obvious that the duties imposed on the motorist are not absolute but are conditional. Neither duty comes into existence unless and until these three conditions exist: (1) A train must be 'approaching' the crossing; (2) the approaching train must be 'plainly visible', and (3) the train must be 'in hazardous proximity' to the crossing. Before either duty c.... be said to have been absolute in a particular case so as to form the basis of an instructed verdict all three conditions must be conclusively established by the evidence."

From the quoted language appellees infer the following:

> "In the McFerrin case, the crossing apparently did not involve signal lights but since signal lights were involved in this case, a fourth condition must be imposed before the duty to stop exists because obviously the Court could not give more effect to one section of the statute than to others. Since the jury found that the lights were not working and that no audible signal had been emitted, the defendant failed to secure the findings required of it before a duty to stop existed upon the part of Davis."

However, in the McFerrin case the Supreme Court, in using the words "duties imposed on the motorist" by the statute is referring to the first paragraph of Section 86, and the duties imposed are the duty to stop and the duty not to proceed until it can be done in safety. The court then points out that these duties are conditional, under subsection (d), upon the co-existence of the three circumstances enumerated by the court. The quoted paragraph from the cited case is not authority for the proposition that more than one subsection of the statute must be conclusively established by the evidence in order to give rise to the duties to stop and not to proceed.

But the appellees insist that since the jury found, on abundant evidence, that the signal lights were not working, there was no duty to stop upon the part of Davis. They cite the per curiam opinion of this court in the case of Texas & Pacific Railway Company v. Moore, Tex.Civ.App., 329 S.W.2d 293 (1959, Ref. N.R.E.). That case imposes a duty to stop under certain circumstances, not by virtue of the statute, but under the common law doctrine of the reasonably prudent man. The case states:

> "We have also given serious consideration to appellee's counter-point to the effect that appellee was not required to stop where crossing signal devices indicated clear crossing. And we say, *without passing on this question,* that it is our view that the signals employed here were capable, *when operating,* of giving but one command, and that would be a command to stop. *The signals did not operate, and thus did not*

*affirmatively direct traffic to proceed.* For this reason we believe that *the test in such cases should be what a reasonably prudent man would do under the same or similar circumstances* before undertaking to cross a railroad grade crossing obviously so equipped, but where no command to stop has been given." (Emphasis supplied).

But in any event, the appellant was proceeding under the provisions of the statute in attempting to establish a defense based upon the wording of Sec. 86, subsection (d), and was entitled to have each element of said defense submitted to the jury in a group, distinctly and separately, (such as suggested here in Requested Special Issues Nos. Sixteen, Seventeen and Seventeen A, and as embodied in Special Issues Nos. 61, 62 and 67) without intermingling with other extraneous issues such as contained herein in Special Issues Nos. 65 and 66. The Supreme Court, in Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, in a decision followed so frequently that citation of cases is prohibitive, sets out the following duties of the trial court in submitting issues to the jury: First, to submit all the controverted fact issues made by the pleadings; second, to submit each issue distinctly and separately, avoiding all intermingling; and, third, to give such explanation and definition of legal terms as shall be necessary to enable the jury to answer each issue. The court further states that:

"Each group of facts pleaded by defendant in error, which, standing alone, would, if proven, constitute a complete defense to plaintiff in error's suit, presented an issue. It was the statutory right of defendant in error to have the issue presented by each complete plea submitted separately to the jury, just as plaintiff in error had the right to have submitted each issue, entitling her to recover, which she pleaded and proved. The court submitted separately, as the statute required, each group of facts relied on by plaintiff in error, under her pleadings and the evidence, to con-

stitute negligence on the part of defendant in error. The court, over the objection of defendant in error, refused to submit separately each group of facts relied on by defendant in error, under its pleadings and the evidence, to constitute contributory negligence on the part of Alexander Fox."

See also McDonald, Texas Civil Practice, Sec. 12.10-E. Affirmative Submission of Defensive Issues, and Sec. 12.18—(IV) Multifarious Issues; Rules 277 and 279, Texas Rules of Civil Procedure.

Based upon the foregoing, we feel constrained to sustain appellant's first, second and fourth propositions.

In its third proposition appellant cites error on the part of the court in overruling appellant's motion for judgment since the jury had found all essential facts in support of a complete defense on the part of appellant. We have seen that the jury, in answer to Special Issues Nos. 61 and 62, found that the train was plainly visible and in hazardous proximity to the crossing before the deceased reached a point fifteen feet from the near rail of the track upon which the train was approaching, so that a reasonably prudent person, in the exercise of ordinary care should have seen the train and realized that an attempt to proceed over the crossing ahead of the train was hazardous. It was uncontested that the deceased did not stop. The proximate cause issue, as conditioned by the court, was not answered, but the appellant contends that the deceased's failure to stop was, as a matter of law, a proximate cause of the collision, and that the court should have so held. We are cited to the case of Lackey v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 225 S.W.2d 630 (1949; N.W.H.) which holds:

"Our conclusion from the undisputed evidence is that the approaching engine was plainly visible to appellant and was in hazardous proximity to the crossing as appellant approached it, and appellant's failure to stop not less than 15 feet from the nearest rail of the

track being used by the engine and his failure to wait until he could safely proceed was a proximate cause of the collision and its consequences."

In Texas & N. O. R. Co. v. Stewart, Tex. Civ.App., 248 S.W.2d 177 (1952; Ref. N.R.E.), also cited, the court bases its finding of negligence and proximate cause on a violation of the statute, Art. 6701d, as well as other evidence in the case. The court recited that:

"In Texas contributory negligence and proximate cause are questions of fact to be decided by the jury except in the following respects: (a) when they consist of violation of the law; (b) or the circumstances are such that in the opinion of the court reasonable minds could not arrive at different conclusions." (Citing cases).

The court sets out provisions of the statute under Section 86 and then points out that Section 143(a) of the act makes the violation of any provisions of the act a penal offense, and concludes:

"* * * Therefore, under the undisputed evidence and under the provisions of the statute last above mentioned, deceased was guilty of negligence as a matter of law when he failed to bring his truck to a stop within fifty feet and not less than fifteen feet of the nearest rail of the railroad. Needless to say that such conduct was negligence per se and that it proximately caused the collision and resulting injuries and damages."

See also Muniz v. Panhandle & Santa Fe Railway Company, Tex.Civ.App., 285 S.W. 2d 809 (1955; Ref. N.R.E.).

Appellees, in their Counter-point No. 3 to appellant's first four propositions, urge, in avoidance of the holdings in the above-cited cases, that since "the jury in this case found that the failure to stop was not negligence and was not the proximate cause of the collision * * * the doctrine of excusable neglect controls." They refer to

Special Issues Nos. 69 and 70, and the jury's answers thereto. Special Issue No. 69 inquired:

"Do you find from a preponderance of the evidence that Carl Davis failed to use ordinary care in failing to stop at the crossing in question?

"By the term 'ordinary care' as used herein is meant that degree of care as would be exercised by a person of ordinary prudence under the same or similar circumstances."

To which the jury answered: "He did not fail." Special Issue No. 70 inquired:

"Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the collision?"

To which the jury answered in the negative. The appellees then refer to the testimony of several witnesses at the trial. One witness testified to the probable stopping distance of the truck involved when travelling at various speeds. Other testimony related to the presence or absence of a whistle or bell sounding on the engine just before the collision, and as to whether mechanical flashing signals were operating at the crossing, the speed of the train, skid marks laid down by the tires of the truck, and related matters. We presume, although it is not clear, that the references to the testimony were intended to show that, although the approaching train of appellant may have been plainly visible to deceased and in hazardous proximity to the crossing, it did not become so in time for the deceased to have stopped in compliance with the statute. Appellees quote from the article written by Justice Calvert in 34 Texas Law Review, where, at page 978, he recognizes that impossibility of complying with the statute might arise. Appellees then cite and quote from various cases, including Cunningham v. Suggs, Tex. Civ.App., 340 S.W.2d 369; Phoenix Refining Co. v. Powell, Tex.Civ.App., 251 S.W. 2d 892; Booker v. Baker, Tex.Civ.App., 306 S.W.2d 767; Craker v. City Trans-

portation Company of Dallas, Tex.Civ.App., 316 S.W.2d 447; Warren Petroleum Co. v. Thomasson, 268 F.2d 5. In the Phoenix Refining Co. v. Powell case (supra) certain principles governing the subject are set out:

"1. A violation of a penal statute which contains an appropriate standard for determining civil liability, constitutes negligence as a matter of law.

"2. This rule is not inexorable. The party violating the statute may assume the burden of going forward with the evidence and raise an issue as to an excusable violation.

"3. If said party bring forward sufficient evidence to raise the issue (and this is a preliminary matter for decision of the trial court), then the issue of negligence determined by the reasonably prudent man standard should be submitted.

"4. The burden of proof upon this issue rests with the party asserting negligence, for upon him rests the burden of proof as distinguished from the burden of going forward with the evidence."

Justice Calvert, in his Law Review article heretofore referred to, has the following to say:

"* * * While the appellate courts of this state seem not to have considered the matter, there is some authority and reason for holding that violation of a statute is excusable, and therefore is not negligence, if one similarly situated and exercising ordinary care could not have complied with the statute."

He then states that should the courts adopt the view that impossibility of compliance with the statute because of lack of time in which to do so excuses a failure to stop, and the pleadings and evidence raise the question, it should be submitted to the jury by additional special issues, the form of which he suggests. We do adopt this view, and feel that this case is appropriate for further exploration in this area.

◼ We have already indicated, by sustaining appellant's first, second and fourth propositions, that this case must be reversed. We now overrule appellant's third proposition, that the refusal to grant appellant's motion for judgment was error. However, we remand this cause to the trial court for further development of the matter of impossibility of compliance with the statute. If, upon a new trial hereof, the pleadings and the evidence raise the question of excusable negligence on the part of the deceased (otherwise non-negligent) in failing to comply with Article 6701d, we hold that this issue should be submitted to the jury under appropriate charges and instructions, in place of Special Issues Nos. 69 and 70, as submitted herein. Furthermore, while we do not pass on any possible prejudice which might have arisen from the form of Special Issue No. 4, which inquires whether the signal lights of the appellant railway company at the crossing in question were operating at the time of the collision, we feel that, in the event of a new trial of this cause, any possible error could be avoided by acceding to the suggestion in appellant's fifth proposition that the condition of the signal lights should have been limited to the view from the south side of the crossing—the side from which the crossing was being approached by the deceased.

This case was submitted to the jury on seventy special issues. Upon a new trial it may become evident that certain of these issues may be eliminated or combined, thus simplifying the task of the jury.

Reversed and remanded.