**SOUTHERN PACIFIC COMPANY et al.,
Appellants,**

v.

**Aurora M. CASTRO, Individually and as
Next Friend of Minors, Sandra
Castro, et al., Appellees.**

No. 7244.

Court of Civil Appeals of Texas,
Beaumont.

Nov. 11, 1971.

Matthews, Nowlin, Macfarlane & Barrett, San Antonio, Clark Murray, Floresville, for appellants.

Brown, Kronzer, Abraham, Watkins & Steely, Houston, Rice & Seely, San Antonio, for appellees.

STEPHENSON, Justice.

This is an action for damages growing out of a truck-train collision in which the truck driver, Arthur Castro, was killed. Plaintiffs are the surviving wife and minor children of the deceased. Trial was by jury and plaintiffs recovered judgment upon the verdict. The parties will be referred to here as they were in the trial court.

The jury made these findings:

Issue 7. That the crossing in question was extrahazardous.

Issue 8. That the failure of the defendant to have an automatic flashing signal in operation was negligence.

Issue 9. That such failure was a proximate cause of this occurrence.

Issue 10. That the train was being operated at a speed in excess of twelve miles per hour.

Issue 11. That such operation was a proximate cause of this occurrence.

Issue 12. That the train was being operated at a speed in excess of twenty-five miles per hour.

Issue 13. That such operation was a proximate cause of this occurrence.

Issue 14. That after the train became plainly visible and in hazardous proximity to the crossing, Arthur Castro could not by the exercise of ordinary care have stopped his vehicle within fifty feet, but not less than fifteen feet, from the nearest rail of the mainline track.

Issue 15. That such inability to stop was not caused by his negligence.

Issue 22. That when the engine of the train was within approximately 1500 feet of the crossing it emitted a signal audible from that distance.

Issue 23. That the train was plainly visible before Arthur Castro reached a point fifteen feet from the nearest rail of the mainline track on which the train was approaching.

Issue 24. That the train was within hazardous proximity to the crossing before Arthur Castro reached a point fifteen feet from the nearest rail of the mainline track on which the train was approaching.

Issue 25. That the failure of Arthur Castro to stop his vehicle within fifty feet, but not less than fifteen feet, from the nearest rail of the mainline track was a proximate cause of this collision.

Issue 26. That this accident was not an unavoidable accident.

The jury failed to make the following findings:

Issue 1. That the train crew failed to keep a proper lookout.

Issue 3. That the engine crew failed to sound a whistle at least 1320 feet from the crossing as the train was approaching.

Issue 5. That the engine crew failed to ring the bell on the engine continuously from a distance of at least 1320 feet from the crossing until after the engine had crossed over the public road.

Issue 16. That Arthur Castro failed to keep a proper lookout.

Issue 18. That Arthur Castro was negligent in stopping the truck between the rails of the track.

Issue 20. That Arthur Castro was driving the truck at a greater rate of speed than a person using ordinary care would have driven it.

The real controversy in this case on appeal centers around the jury findings in Issues 22, 23, 24 and 25, and the findings in Issues 14 and 15. Article 6701d, § 86, Vernon's Ann.Civ.St., reads, in part, as follows:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

*     *     *     *     *     *

"(c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or

nearness to such crossing is an immediate hazard;

."(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

Defendant contends it is entitled to judgment because the jury findings in Issues 22, 23, 24 and 25 established negligence per se on the part of Arthur Castro which proximately caused this collision. Plaintiffs answer that such negligence was excused by jury findings to Issues 14 and 15, and, therefore, plaintiffs were entitled to the judgment entered. Defendant replies that Issues 14 and 15 do no more than excuse Arthur Castro under § 86(d), and it was still entitled to judgment because of the negligence per se found under § 86(c).

Issue 24 was conditioned upon an affirmative answer to either Issue 22 or 23, and Issue 25 was conditioned upon an affirmative answer to Issue 24. We reproduce Issues 14 and 15 here so the problem may be more easily understood:

"ISSUE NO. 14 Do you find from a preponderance of the evidence that after the train became plainly visible and in hazardous proximity to the crossing, ARTHUR CASTRO could not by the exercise of ordinary care have stopped his vehicle within fifty feet but not less than fifteen feet from the nearest rail of the mainline track.

"A train is 'plainly visible' if a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety would have seen it.

"A train is 'in hazardous proximity to the crossing' if the speed or nearness of the train is such that a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety, would reasonably conclude that he cannot pass over the crossing without danger of collision.

"Answer: 'We do' or 'We do not.'

"Answer: ____We do____

"If you have answered Issue No. 14 'We do' then answer Issue No. 15; otherwise do not answer Issue No. 15.

"ISSUE NO. 15 Do you find from a preponderance of the evidence that the inability of ARTHUR CASTRO to stop, if any, was not caused by his own negligence.

"Answer: 'We do' or 'We do not.'

"Answer: ____We do____

■ The law is generally accepted not in Texas to be, under the negligence per se doctrine, once it is established that a party did violate a traffic statute, then the burden shifts to the offender to come forward with some evidence of "excuse"—and the validity of the excuse depends upon the absence of common law fault. Thus, in this case, when defendant established the violations of § 86(c) and (d) by Arthur Castro, as was done by the jury answers to Issues 22, 23, and 24, the burden was then upon plaintiffs to establish the absence of negligence as an excuse for such traffic violations. See 44 Tex.Law Rev. 1, 19.

Further statements as to the law controlling this case appear in Christy v. Blades, 448 S.W.2d 107, 111 (Tex.Sup.1969):

"[I]t is settled in Texas that an unexcused violation of Article 6701d, § 86 (d), constitutes negligence as a matter of law."

and,

"It is also our opinion that when impossibility of compliance is raised but not conclusively shown by the evidence, the motorist must request the submission of proper excuse issues before he will be heard to complain of their omission from the charge."

Chief Justice Calvert in his article in 34 Tex.Law Rev. 971, 977 entitled "Special Issues Under Article 6701d, Section 86(d), of the Texas Civil Statutes", has written:

"It is very generally held that violation of a statute is excusable, and therefore

is not negligence, if the violation is one that a reasonably prudent person would have committed under the same or similar circumstances . . . ."

The opinion in Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 936 (1956), makes it clear that the reasonably prudent man test is applicable to the present situation. It is there written:

"Accordingly, we apply the objective common-law test of the reasonably prudent man and hold that before it can be said in a given case that an approaching train was 'plainly visible' as a matter of law, it must appear, as a matter of law, that a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it. We further hold that it will not be said that a train was 'in hazardous proximity' to a crossing, as a matter of law, unless under all the attendant facts and circumstances it can be said, as a matter of law, that by reason of the speed and nearness of the train a reasonably prudent person should have known that an attempt to proceed over the crossing ahead of the train, was hazardous."

That court at page 940 applied such doctrine in this manner:

"We hold, as a matter of law, under the facts and circumstances of this case, that a reasonably prudent person, situated as was the deceased, should have known that an attempt to proceed over the crossing ahead of the train, was hazardous. We accordingly hold, as a matter of law, that at the time the train became 'plainly visible' it was 'in hazardous proximity' to the crossing."

██ In view of the jury findings in Issues 22, 23, 24 and 25, plaintiffs had the burden of securing jury findings of excuse as to both § 86(c) and (d). It is also clear under the case law in this state, that § 86 (c) and (d) are separate and distinct defenses. Texas & Pacific Railway Company v. Davis, 374 S.W.2d 305 (Tex.Civ. App., El Paso, 1963, writ ref., n. r. e.) and cases there cited. So the paramount question, at this point, is to determine whether or not the answers to Issues 14 and 15 constitute excuses for the negligence per se found under both § 86(c) and (d).

Issue 14 is the key issue. It contains the two elements "plainly visible" and "hazardous proximity" in the conjunctive state. The inquiry is whether or not after the train became plainly visible and in hazardous proximity to the crossing Arthur Castro could not by the exercise of ordinary care have stopped his vehicle within the specified distances. Defendant emphasizes the fact that this jury was not asked whether or not, after an audible signal and in hazardous proximity to the crossing, Arthur Castro could not by the exercise of ordinary care have stopped his vehicle within the specified distances.

██ If the Supreme Court of Texas had not applied the "reasonably prudent man" test to the determination of "hazardous proximity", our problem would be simple. In each case in which a train and vehicle collide, it would be established as a matter of law, that the train was in hazardous proximity. But, such is not the case, and the test is that the driver of the vehicle, acting as a reasonably prudent man, must consider the *speed* and the nearness of the train in concluding whether or not he could pass over the crossing without danger of collision. In Missouri Pacific Railroad Company v. Rose, 385 S.W.2d 492, 501 (Tex.Civ.App., Houston, 1964, writ ref., n. r. e.) this statement is made:

"The Supreme Court in the case of Missouri-Kansas-Texas R. R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, had occasion to review the meaning of Article 6701d, Sec. 86. The effect, we think, of that decision was to hold that the duty to stop an automobile within the given range arose only if the conditions prescribed by a given subdivision existed. However, in determining whether or not

the particular facts existed upon which the duty to stop arose, the common law standard of the reasonable, prudent person was applied. Under Subd. (c) the mere fact that the train was emitting an audible signal and was within 1500 feet of the crossing does not give rise to a duty to stop. The duty to stop arises only if, considering the speed of the engine or its (the engine's) nearness to the crossing, it is an immediate hazard. It will be noted Subd. (c) refers to the position of the engine. In determining whether because of its speed or nearness to the crossing it is an immediate hazard we apply the common law test. The question is whether a reasonably prudent person in the exercise of ordinary care under all existing surrounding facts would conclude the engine, or train if a part of the train be between the engine and the crossing, could be seen, was an immediate hazard."

We have not been cited, nor have we found a case in Texas similar to the one before us here. That is, one in which there are jury findings of contributory negligence under both § 86(c) and (d), and a jury finding of "excuse". In its brief, defendant makes this argument: "Speed or nearness can be determined from the whistle, bell, engine noise, visibility, or any number of other elements." But it is not made clear how this can be done. Regardless of how loud a signal from the train might be, it is not demonstrated how a motorist could determine from the sound how fast a train was traveling, if moving at all. The motorist is required to stop only if the train is *approaching* and its *nearness* and *speed* make it an *immediate hazard*.

Defendant suggests the plaintiff could have submitted the "excuse" issue under § 86(c) in the following manner:

"Do you find from a preponderance of the evidence that after the engine of the train emitted a signal within approximately 1500 feet of the crossing in question which was audible from that distance and the train was in hazardous proximity to the crossing, Arthur Castro could not, by the exercise of ordinary care have stopped his vehicle within fifty (50) feet, but not less than fifteen (15) feet from the nearest rail of the main-line track?

"A train is 'in hazardous proximity to the crossing', if the speed or nearness of the train is such that a driver, situated as was Arthur Castro, and using ordinary care for his own safety would reasonably conclude that he cannot pass over the crossing without danger of collision."

However, it is noted the term "hazardous proximity" is used in this suggested issue with the definition including the words "speed" and "nearness." The same perplexing problem still exists. Could the jury have made a determination of that issue without taking into consideration the "visibility" of the train?

We have come to the conclusion that it is not possible to submit an "excuse" issue to the jury without including the element of "visibility" because of the definition of "hazardous proximity" as given to us by the Supreme Court of Texas in Missouri-Kansas-Texas Railroad Co. v. McFerrin, supra. Defendant's point of error is overruled.

Defendant has a series of points of error pertaining to an ordinance of the City of Floresville controlling the speed of trains. Plaintiffs went to trial in this case upon pleadings which included this allegation:

Defendants were negligent: "(f) In operating the train in excess of the legal speed limit."

In the opening statement to the jury, plaintiffs' attorney made the statement that he intended to prove that the city ordinance of Floresville limits the speed of trains to twelve miles per hour. During the course of the trial, plaintiffs offered such city ordinance in evidence and defendant objected on the ground that there were no pleadings. The trial court granted

plaintiffs leave to file a trial amendment in which it was alleged in separate paragraphs that defendant was negligent in operating the train in excess of twelve miles per hour in violation of the Floresville city ordinance limiting the speed to twelve miles per hour and in operating the train in excess of twenty-five miles per hour in violation of such city ordinance limiting the speed to twenty-five miles per hour. Defendant excepted to the action of the trial court on the ground that it came as a surprise.

■ We have concluded the trial court did not abuse its discretion in permitting the trial amendment. In view of the original pleadings quoted above, defendant was put on notice that plaintiff intended to rely upon the violation of the legal speed limit by defendant as a ground for recovery. The defendant has failed to demonstrate here, as he failed to demonstrate in the trial court, that the allowance of such amendment prejudiced it in maintaining its defense upon the merits. Rule 66. Missouri-Kansas-Texas R. Co. of Texas v. Waddles, 203 S.W.2d 350 (Tex.Civ. App., Amarillo, 1947, no writ) and cases cited. Proof of the ordinance was made under the "ancient document" rule and such ordinance was properly admitted by the court. These points of error are overruled.

■ Defendant pled both common law and statutory negligence on the part of Arthur Castro as to the speed at which he was driving the truck. The trial court submitted common law negligence which the jury answered favorably to plaintiff. The court refused two proffered series of issues based upon violations of sub-sections (b) and (c) of § 166, Article 6701d, V.A. C.S. We do not quote the requested issues as it is sufficient to say neither series included an issue inquiring whether the violation was negligence. We think the law is clear that under the circumstances of this case, such negligence issues were a necessary part of the series and the court properly refused to submit such issues. See the

opinion written by Justice Keith in Davis v. Gatlin, 462 S.W.2d 54, 57 (Tex.Civ.App., Beaumont, 1970, error ref., n. r. e.).

■ Defendant next attacks the finding by the jury that the crossing in question was extra-hazardous. We pass upon the "no evidence" point by considering only the favorable evidence to such finding and the "insufficiency" and "contrary to the great weight" points by considering the entire record. No complaint is made about the definition given with this issue.

We must view the situation as it existed on the night of the collision in order to determine whether or not this crossing was extra-hazardous. This law was restated by the Supreme Court in Fort Worth & Denver Railway Company v. Williams, 375 S.W.2d 279 (Tex.Sup.1964). A railroad crossing may present no undue danger at one time, while at another it may be extra-hazardous. The degree of danger involved depends on the circumstances existing at the time of the accident. This *Williams Case,* supra, quotes Tisdale v. Panhandle & S. F. Ry. Co., 228 S.W. 133, 136, 16 A.L.R. 1264 (Tex.Com.App.1921), as follows:

"A flagman might not be required under the law at a certain crossing at one time, and yet it might be negligence to fail to provide one there at another time. The sole question for determination is whether or not at the time of the accident the conditions surrounding the crossing in question rendered it more than ordinarily hazardous or unusually dangerous."

The evidence shows many elements which would affect the visibility at this crossing the night of the collision: The curve in the track coupled with the absence of an oscillating light on the engine; The rise in the grade at the crossing; The presence of trees and peanut trailers; The growth of weeds and grass; the large tanks, the small tanks, and a small house. These points of error are overruled.

■ The jury awarded $100,000.00 in damages to the surviving wife and $30,-

000.00 each to the four children whose ages were 10 years and 9 months; 9 years; 7 years and 10 months; and 7 years. Defendant contends that each of these awards is excessive. The evidence shows that Arthur Castro was 33 years old at the time of his death and had a life expectancy of 37.7 years. His wife was 31 years old at the time with a life expectancy of 45.7 years. Castro made approximately $7,000.-00 in 1967, including his regular job and his extra job driving a truck for his brother on Saturdays. We think the evidence shows Castro to have been a devoted husband and father, a hard worker, and to be in good health. The amounts of these awards do not shock our sense of justice.

We find no merit to the remaining points of error and they are overruled.

Affirmed.

DIES, Chief Justice (concurring).

I concur with the opinion of Justice Stephenson and for the following additional reasons.

The antecedent of Rule 279 was Article 2190 as amended by Acts 42nd Leg. 1931, ch. 78, § 1, p. 120. It read:

"When the Court submits a case upon special issues, he shall submit all the issues made by the pleading and evidence. Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or Writ of Error, an issue not submitted and not requested is deemed as found by the Court in such manner as to support the judgment if there is evidence to sustain such finding."

Following the passage of this Act, the Supreme Court in 1940 "[i]n view of the confusion that has resulted from the construction of Art. 2190, this court has decided to reexamine the question and reannounce rules relating to the submission of special issues." Thus emerged the important and oft cited case of Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, 80 (1940), which remains today the authority in these matters.

There plaintiff Pepper sued the Wichita Falls & Oklahoma Railway Company and the Wichita Valley Railway Company for damages to his growing crops based upon the negligence of the defendants by causing flood waters to cover the land.

Judgment was entered for the plaintiff following jury answers to special issues. An issue was submitted inquiring what would have been the number of bushels of corn plaintiff would have raised had it not been damaged by the acts of the defendants; but no issue was submitted as to what amount of cotton was actually raised by plaintiff on the land damaged.

The court held that in the absence of objections, the trial court could make this finding:

"Where the court submits issues covering two or more grounds of recovery or defense, and the jury finds essential facts on one ground sufficient to base a judgment thereon, the court has the power to enter judgment in the cause, although it may appear that another or other grounds of recovery or defense have been submitted in part, or incompletely submitted, with the acquiescence of the parties, covering separate and independent grounds of recovery or defense; and the jury having made answer thereto, the court may find on such issue, or issues, not submitted, and not requested, in such manner as to support the judgment, if there is evidence to sustain such finding." Wichita Falls & Oklahoma Ry. Co. v. Pepper, supra, p. 85.

To conform with this decision, Rule 279 added the following:

"[B]ut where such ground of recovery or of defense consists of more than one issue, if one or more of the issues necessary to sustain such ground of recovery or of defense, and necessarily re-

ferable thereto, are submitted to and answered by the jury, and one or more of such issues are omitted, without such request, or objection, and there is evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted issue or issues in support of the judgment, but if no such written findings are made, such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment."

Thus, explained Judge Alexander (see comment quoted in 3 Vernon's Ann.Rules Civ.Proc., p. 8):

" 'If, however, the grounds of recovery or of defense consist of more than one element—that is, require more than one issue to submit them—and the court submits some of the elements but omits others, and there is no objection to the failure to submit same, the parties will be placed in the position of having agreed to waive a jury trial on the unsubmitted elements and to have submitted them to the court for his determination.' "

I do not see Christy v. Blades, 448 S.W. 2d 107, 110 (Tex.Sup.1969), holding it plaintiff's burden to request and obtain "excuse" under Article 6701d, § 86 as controlling here for we do not have a failure to submit "excuse"; only at best an incomplete submission. It is this situation, in my judgment, the above quoted portion of Rule 279 is designed to cover.

To me, the record reveals that here the trial court and all attorneys thought the "excuse" just referred to was being adequately submitted. Appellant objected to issues 14 and 15 (the excuse issues):

1. "Defendants object and except to special issue No. 14 and 15 for the reason that the evidence is legally and factually insufficient to submit to the jury the doctrine of impossibility of compliance *or excuse under the Texas law* for the

reasons that under the plaintiff's theory of speed of the motor vehicle the plaintiff's doctrine of excuse cannot be given legal effect because the motorist, Arthur Garza Castro, was under a duty to regulate the speed of his automobile pursuant to revised civil statute 6701d, section 166c, so as to drive at an appropriate reduced speed when approaching and crossing a railroad grade crossing." (emphasis ours)

2. "Defendants object and except to the submission to the jury of special issues Nos. 14 and 15 for the further reason that a motorist is under a duty to regulate the speed of his automobile and to keep it under such control when he approaches a railroad grade crossing *so as to be able to comply with revised civil statute 6701d, section 86, sub-section C. and D.* at any time that the situation described by those statutes arises." (emphasis ours)

3. "Defendants object and except to the submission to the jury of issues 14 and 15 on the ground that the inability of the motorist, Arthur Garza Castro, as alleged by the plaintiffs to stop because of speed or briefness of time was caused by the negligence of Arthur Garza Castro and is *therefore no legal excuse as a matter of law for his failure to stop his motor vehicle as required by revised civil statute 6701d, section 86, sub-section C. and D.*" (emphasis ours)

4. "Defendants object and except to the submission of issues No. 14 and 15 to the jury because the evidence conclusively shows that as Arthur Garza Castro approached the intersection of Trail Street and the tracks of the Southern Pacific Railroad advance warning signs were clearly visible to him as well as the statutory warning signs at the crossing, and the evidence shows that the driver of the motor vehicle was clearly warned of his impending approach to a railway grade crossing *and therefore the doctrine of excuse advanced by the plaintiffs* is clearly inapplicable because the driver was

given a warning of the necessity of reducing his speed of his motor vehicle because of the railroad grade crossing he was approaching and therefore his failure to decrease the speed of his motor vehicle as required by Texas law constituted negligence as a matter of law on the part of the driver of the motor vehicle." (emphasis ours)

And, even more clearly, appellant objects to the submission of issues 14 and 15 as being duplicitious:

"Defendants object and except to the submission to the jury of special issues Nos. 14 and 15, for the reason that such issues are deplicitious and constitute a shade and phase of the issues as submitted by the defendants regarding the doctrine of statutory violation of Revised Civil Statute 6701d, Section 86c and d."

And so we have a case here not of silence in the trial court, but of objections contrary to the position now taken in this court.

Objections are to aid the court in preparing a correct charge and preventing error. While it was once permitted to mislead the trial court and then appeal if the verdict was unfavorable, it is no longer. See 3 McDonald Texas Civil Practice (1970 Rev.). Certainly I do not believe there was any intentional misleading here, but the result is the same.

To me, the phrase "immediate hazard" as used in Article 6701d, § 86(c) and "hazardous proximity" as used in § 86(d) of the same article mean the same thing. Nothing is more difficult to submit under Texas law than a railroad crossing collision. Until the statutes are clarified and simplified by the legislature, we will continue to have perplexing problems such as presented by this case.

KEITH, Justice (dissenting).

I dissent from an opinion which refuses to follow either the legislature, the Supreme Court, or the jury verdict and I decline to join in the judicial repeal of the provisions of sub-section (c), § 86, Article 6701d, V.A.C.S. In order to make my position clear and to place the question in proper perspective, I first summarize the findings and non-findings of the jury. In so doing, I will assume for the purpose of this dissent that the pleadings and the evidence required the trial court to submit each of the issues included in the charge. The findings on negligence and proximate cause were submitted in this manner:

The jury did *not* find from a preponderance of the evidence that the following facts were true:

#1—The train crew failed to keep a proper lookout;

#3—The train crew failed to sound the whistle at least 1320 feet from the crossing;

#5—The train crew failed to ring the bell continuously from a point at least 1320 feet from the crossing until the engine had crossed over the crossing;

#16—The truck driver failed to keep a proper lookout;

#18—The stopping of the truck with its front wheels between the rails of the track was negligence;

#20—The truck was being operated at an excessive speed.

The jury found the following fact issues to *be true:*

#7—The crossing was extra-hazardous;

#8—The failure of the railroad to have an automatic flashing signal at the crossing was negligence;

#9—Such negligence was a proximate cause of the accident;

#10—The train was being operated at a speed in excess of 12 miles per hour;

#11—Such was a proximate cause of the accident;

#12—The train was being operated at a speed in excess of 25 miles per hour;

#13—Such was a proximate cause of the accident;

#16—The happening was not the result of an unavoidable accident.

I now reproduce the jury findings with reference to the alleged statutory violations:

"*ISSUE NO. 22* Do you find from a preponderance of the evidence that when the engine of the train was within approximately 1,500 feet of the crossing in question it emitted a signal which was audible from that distance?

"Answer: We do

"*ISSUE NO. 23* Do you find from a preponderance of the evidence that the train was plainly visible before ARTHUR CASTRO reached a point fifteen feet from the nearest rail of the mainline track on which the train was approaching?

"A train is 'plainly visible' if a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety, would have seen it.

"Answer: We do

"If you have answered either Issue No. 22 or No. 23 'We do', then answer Issue No. 24; otherwise do not answer Issue No. 24.

"*ISSUE NO. 24* Do you find from a preponderance of the evidence that the train was in hazardous proximity to the crossing in question before ARTHUR CASTRO reached a point fifteen feet from the nearest rail of the mainline track on which the train was approaching?

"A train is 'in hazardous proximity to the crossing' if the speed or nearness of the train is such that a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety, would reasonably conclude that he cannot pass over the crossing without danger of collision.

"Answer: We do

"If you have answered Issue No. 24 "We do', then answer Issue No. 25; otherwise do not answer Issue No. 25.

"*ISSUE NO. 25* Do you find from a preponderance of the evidence that the failure of ARTHUR CASTRO to stop his vehicle within fifty feet, but not less than fifteen feet, from the nearest rail of the mainline track was a proximate cause of the collision in question?

"Answer: We do."

The court also submitted two so-called "excuse" issues and I note that they were submitted independently, i. e. not conditioned upon any prior finding of the existence of the underlying facts, and also note at this point that the plaintiffs did not level *any* objections to the charge.[1] Special Issues Nos. 14 and 15 read as follows:

"*NO. 14* Do you find from a preponderance of the evidence that after the train became plainly visible and in hazardous proximity to the crossing, ARTHUR CASTRO could not by the exercise of ordinary care have stopped his vehicle within fifty feet but not less than fifteen feet from the nearest rail of the mainline track.

"A train is 'plainly visible' if a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety would have seen it.

"A train is 'in hazardous proximity to the crossing' if the speed or nearness of the train is such that a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety, would reasonably conclude that he can-

---

1. All emphasis herein has been supplied unless otherwise indicated.

not pass over the crossing without danger of collision.

"Answer: We do

"If you have answered Issue No. 14 'We do', then answer Issue No. 15; otherwise, do not answer Issue No. 15.

"*NO. 15* Do you find from a preponderance of the evidence that the inability of ARTHUR CASTRO to stop, if any, was not caused by his own negligence.

"Answer: We do."

After receipt of the verdict and discharge of the jury, plaintiffs moved for the entry of judgment in their favor "in accordance with the verdict of the jury." The defendants moved for entry of judgment in their favor based upon the answers to Special Issues Nos. 22, 24 and 25 "for the reason that the jury returned complete findings that ARTURO CASTRO violated Article 6701d, Section 86(c) . . . which violation constitutes negligence per se and entitles these Defendants to a judgment in their favor as a matter of law; Plaintiffs neither raised nor submitted issues of excuse directed to violation of Section 86(c)." Alternatively, defendants prayed for judgment after disregarding the answers to Special Issues Nos. 14 and 15. After due and proper notice, the court granted plaintiffs' motion and denied that of the defendants. Judgment was entered pursuant to and upon the jury verdict in favor of plaintiffs in the amounts found by the jury and others covered by stipulations of the parties.

The railroad contends that the judgment of the trial court should be reversed and judgment here rendered *upon the verdict* because Special Issues Nos. 22, 23, 24 and 25 constituted complete findings to two violations [sub-sections (c) and (d) of the statute], while the answers to Special Issues Nos. 14 and 15 amounted to an excuse

for the violation of sub-section (d) only. Or, to state the matter differently, plaintiffs' decedent was convicted of two statutory violations and plaintiffs sought and procured only one excuse thereof. We sustain the contention so advanced.

The provisions of Article 6701d, Section 86, sub-sections (c) and (d) read:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

\*     \*     \*     \*     \*     \*

"(c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard;

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

The provisions of Section 86 of the statute impose upon a motorist approaching a railroad crossing a duty to stop his vehicle within fifty feet but not less than fifteen feet of the nearest rail when either of the conditions set out in the section come into existence. Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 935 (1956).[2] The four lettered sub-sections of Section 86 "set out several distinct and separate conditions" under which the duty to stop arises. Texas & Pacific Railway Company v. Davis, 374 S.W.2d 305, 308 (Tex.Civ.App., El Paso, 1963, error ref. n. r. e.). I note that the trial court submitted the alleged violations of both sub-sections of the statute in the manner suggested in 1 Texas Pattern Jury Charges, § 7.10, and have already mentioned

2. *McFerrin* involved only sub-section (d) of the cited statute; and Justice Calvert's much-cited law review article, "Special Issues Under Article 6701d, Section 86(d), of the Texas Civil Statutes," 34 Texas L.Rev. 971 (1956), does not include a discussion of sub-section (c).

that plaintiffs do not object to the form or content thereof.

Before the provisions of sub-section (c) become operative to require a motorist to stop his vehicle before going upon the track, three conditions must be established by the railroad, either as a matter of law or as a matter of fact: (a) A railroad engine approaching the crossing within approximately fifteen hundred feet of the crossing, (b) *emits a signal audible* from such distance, and (c) such *engine* by reason of the speed or nearness to such crossing, is an immediate hazard. *Davis Case*, supra (374 S.W.2d at p. 308).[3] This sub-section refers to *sound* emitted by the engine and makes no reference to visibility.

Sub-section (d) becomes operative, i. e. the duties imposed by the statute come into existence, only when the railroad succeeds in establishing, either as a matter of fact or of law: "(1) A train must be 'approaching' the crossing; (2) the approaching train must be 'plainly visible', and (3) the train must be 'in hazardous proximity' to the crossing." *McFerrin Case*, supra (291 S.W.2d at p. 935). Visibility of the *train*, not audibility of the signal emitted by the engine, is involved in this sub-section.

For the purpose of this dissent, I will treat Issues Nos. 14 and 15 as having established facts supporting legal "excuse" for the violation of sub-section (d). This assumption is contrary to the railroad's attack upon such findings, both factually and legally, but such contentions are not reached in this opinion. I base my holding upon the assumption that the two findings (14 and 15) were sufficient to permit plaintiffs to escape the legal consequences arising from the finding that subsection (d) was violated.

As early as 1883, the legislature required railroads in this state to equip their locomotive engines with whistles *or* bells which were to be blown or rung "at the distance of at least eighty rods from the place where the railroad shall cross any public road." Tex.Laws 1883, ch. 39, § 1, 9 H. Gammel, Laws of Texas 334 (1898). Ten years later the statute was amended to require both the whistle *and* the bell to be used as the locomotive engine approached the road crossing. Tex.Laws 1893, ch. 66, § 1, 10 H. Gammel, Laws of Texas 517 (1898). This legislation has been amended from time to time but has been a part of our laws ever since, it now appearing as Article 6371, V.A.C.S. It reads, as pertinent to our discussion, as follows:

"A bell of at least thirty (30) pounds weight and a steam whistle, air whistle or air siren shall be placed on such locomotive engine, and the steam whistle, the air whistle or air siren shall be sounded and the bell rung at a distance of at least eighty (80) rods from the place where the railroad shall cross any public road or street, and such bell shall be kept ringing until it shall have crossed such public road, or stopped; * * *."

Chief Justice Brown, construing the statute in Houston & T. C. R. Co. v. O'Neal, 91 Tex. 671, 47 S.W. 95 (1898), said:

"The reason for requiring the whistle to be blown before passing that point [80 rods from the crossing] was to give at least that much warning from an instrument that could be heard a long distance. While the statute does not in terms fix the distance from the crossing at which the whistle must be blown, otherwise than to direct that it shall be done before passing such point, its spirit clearly requires it to be blown so near that under

.3. In Swonke v. Hildebrandt Engineering Company, 389 S.W.2d 355, 357 (Tex. Civ.App., Waco, 1965, error ref. n. r. e.), the court said: "Under the latter subdivision [sub-section (c)] the tests for determining whether the motorist's duty to stop is absolute is whether the conditions there enumerated are shown to exist. These are: (1) the engine must be 'approaching' (2) within approximately 1500 feet of the crossing, (3) emitting an audible signal, and (4) the engine, by reason of its speed and proximity must be an immediate hazard."

all the circumstances it would be reasonably calculated to give warning to persons about to use the crossing. It results that, in order to comply with the statute, the whistle must be blown at some point sufficiently near the crossing to be reasonably calculated to give warning to persons about to use same; such point not to be nearer to such crossing than 80 rods."

As said in Texas & N. O. R. Co. v. Stratton, 74 S.W.2d 741, 743–744 (Tex.Civ. App., San Antonio, 1934, error ref.), "The use of ·signs, signals, and warnings is for the purpose of letting persons using the highway know of the presence of the crossing, and that a train is approaching." And, it is clear, from Judge Critz' holding in Rio Grande, E. P. & S. F. R. Co., v. Dupree, 55 S.W.2d 522, 525 (Tex.Comm. App., 1932), that "[t]he failure to ring the bell and sound the whistle was negligence as a matter of law."

Before the adoption of Section 86, the conduct of a motorist approaching a grade crossing was not governed by specific statute. Instead, the rule was one which the courts had fashioned and was aptly stated in Galveston H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.2d 247, 251 (1932):

"It is well settled in this state that a failure of a person approaching a railroad crossing to stop, look, and listen for approaching trains, and who is killed or injured, does not constitute contributory negligence as a matter of law, but it is a question of fact to be determined under all the surrounding facts and circumstances."

Justice Walker in Christy v. Blades, 448 S.W.2d 107, 110 (Tex.Sup.1969), makes it clear that the statute under consideration made a change in the law of Texas, when he said:

" * * * it is our opinion that when a violation of Article 6701d, § 86(d), has been established by findings similar to those quoted above, impossibility of com-

pliance is not properly submitted by requiring the jury to determine whether the motorist exercised ordinary care."

This ruling is required because, as he says, "it is settled in Texas that an unexcused violation of Article 6701d, § 86(d), constitutes negligence as a matter of law." What was said about sub-section (d) in the foregoing case, applies with equal vigor to the provisions of sub-section (c) since one relates to the sense of sight while the other relates to the sense of hearing.

Upon the basis of the jury findings (to Issues Nos. 22, 24, and 25), the railroad was entitled to a judgment that the plaintiffs take nothing. This follows for, as was said in Missouri Pacific Railroad Co. v. Burns, 382 S.W.2d 761, 764 (Tex.Civ.App., Waco, 1964, no writ), "we have jury findings expressly holding that appellee violated the express provisions of Section 86(c), of Art. 6701d." Such findings, as was said in *Burns,* "convicted appellee of contributory negligence and precluded him from any recovery." See also, Missouri Pacific Railroad Company v. Young, 403 S.W.2d 898, 900 (Tex.Civ.App., Corpus Christi, 1966, orig. proceedings).

Under this state of the record, assuming the evidence raised the issue of impossibility of compliance with sub-section (c), "the motorist must request the submission of proper excuse issues before he will be heard to complain of their omission from the charge." *Christy Case,* supra (448 S.W.2d at p. 111). The only "excuse" issues related to sub-section (d) and plaintiffs did not procure findings which. excused the established violation of sub-section (c) as required under *Christy,* supra.

Plaintiffs, defending their "excuse issues," say that "the language of Special Issues Nos. 14 and 15 was taken directly from the *Christy* opinion." In so contending, the plaintiffs confess to the implied deficiency in the issues. Only sub-section (d) was involved in *Christy* and I agree for the purpose of this dissent that such issues were sufficient to excuse the violation of

that sub-section. Thus, plaintiffs are now in the position of having *no* excuse issues as to the violation of sub-section (c) and none was requested by them. I have, consequently, no alternative but to reverse the judgment of the trial court and render judgment for the defendants.

The majority recognizes, as it must under *Christy,* that it was plaintiffs' burden to procure jury findings of justification or excuse of *both* statutory violations. Plaintiffs contend, and the majority have agreed, that Special Issues Nos. 14 and 15 quoted above constitute legal justification or excuse for *both* violations. I disagree. I do agree that these findings (Nos. 14 and 15) constitute legal justification or excuse for the violation of sub-section (d). The question is so worded that the answer of the jury is confined to a time "after the train became plainly visible" and has no reference to a time after the engine had emitted an audible signal, as set out in sub-section (c). Two violations were established by the jury findings but only one excuse was submitted or found.

I am not persuaded by the long quotation in the majority opinion from Missouri Pacific Railroad Company v. Rose, 385 S.W. 2d 492, 501 (Tex.Civ.App., Houston, 1964, error ref. n. r. e.). It is apparent that the statutory violation involving sub-section (c) was not submitted to the jury in *Rose* (385 S.W.2d at p. 496). Chief Justice Bell commented upon the fact that the evidence did not show that the horn or whistle was emitting a plainly audible signal as the *train* approached the crossing and, while the jury found that the bell on the engine was emitting a signal, "it was not negligence for Rose to fail to heed it." (385 S.W.2d at p. 501). In the *Rose Case,* there were four gondola cars estimated to be from "200 to 225 feet" in length ahead of and being pushed by the engine toward the crossing. [See cognate case of Missouri Pacific Railroad Co. v. Rose, 380 S.W.2d 41, 46 (Tex.Civ.App., Houston, 1964, error ref. n. r. e.)].

Justice Bell then confines the holding in *Rose* to the question which he posed: "The question is whether a reasonably prudent person in the exercise of ordinary care under all existing surrounding facts would conclude the engine, or train if a part of the train be between the engine and the crossing, could be seen, was an immediate hazard." (385 S.W.2d at p. 501). The thrust of Justice Bell's question was "immediate hazard," and the visibility aspect of his question was confined to that portion of the train between the engine and the crossing.

That is *not* the question now before this court. Here, just as in Missouri Pacific Railroad Co. v. Burns, supra (382 S.W.2d at p. 764), "we have jury findings expressly holding that appellee violated the express provisions of Section 86(c), of Art. 6701d." And, as was said in *Burns,* supra, such findings of a violation of sub-section (c) "convicted appellee of contributory negligence and precluded him from any recovery." (id.) [4]

Nor do I subscribe to the majority determination that "it is not possible to submit an 'excuse' issue to the jury [as to sub-section (c)] without including the element of 'visibility.'" Defendant's suggested issue quoted in the majority opinion may not be precisely accurate, but it at least demonstrates one possible method of submission which incorporates the excuse factor under sub-section (c). The legislature has recognized that God endowed the human race with two senses applicable to motorists approaching grade crossings: sight and hearing. It has said that one must use both of these God-given senses as he approaches the crossing. The majority finds this to be a "perplexing problem," but I have no such difficulty.

---

4. I note that in *Burns*, the jury did not convict plaintiff of contributory negligence under sub-section (d) since it did not find that the train was plainly visible to plaintiff. (382 S.W.2d at p. 762). *Burns* is, strangely, not mentioned in the majority opinion.

Under the circumstances set out in subsection (c), the legislature has said that a motorist shall use his sense of hearing. The jury has found that the conditions were applicable *as a matter of fact* in our case. The Supreme Court has said that it is the burden of plaintiffs to procure a finding of justification or excuse for the statutory violation. Plaintiff has failed to justify or excuse the violation of subsection (c). Consequently, under *Christy,* supra, I have no alternative but to reverse the judgment of the court below and to enter judgment upon the *verdict* for the defendant.

Nor am I persuaded by the concurring opinion of Chief Justice Dies. His reliance upon and his long quotation from the *Pepper Case* (135 S.W.2d at p. 85, syl. 9) points up the misconception prevalent in this case. Two statutory violations were established by the pleadings and the evidence—sub-sections (c) and (d)—and each was an independent ground of defense. If the *Pepper Case* is to be relied upon, the language governing our case is to be found in syllabus 6 where the court said:

"Where the court fails to submit a separate or independent ground of recovery or defense, and there is no request to submit the issue or issues omitted, such issue or issues are waived, and no waiver can be imputed to the other party for such failure." (135 S.W.2d at p. 85).

Justice Greenhill in Glens Falls Insurance Co. v. Peters, 386 S.W.2d 529, 531 (Tex.Sup.1965), restated the rule in this manner:

"Under the provisions of Rule 279, Texas Rules of Civil Procedure, an independent ground of recovery or defense not conclusively established by the evidence is waived if no issue is given or requested."

One of the cases cited by Justice Greenhill in *Peters,* supra, was Connor v. Lane, 355 S.W.2d 223, 225 (Tex.Civ.App., Waco, 1962, no writ). It is peculiarly applicable here because the jury having found plaintiff's decedent guilty of violating sub-section (c) of the statute, the excuse of such violation was " 'one relied upon' " by plaintiffs in order to recover. The issue was not " 'conclusively established under the evidence' "; indeed, it appears from a careful review of the record that an affirmative answer to such an excuse issue, had it been submitted, would have been against the great weight and preponderance of the evidence.

I have previously alluded to the recent opinion in Christy v. Blades, supra, and pause here only to note that Justice Walker there used the plural when he said: "[T]he motorist must request the submission of proper excuse *issues* before he will be heard to complain of their omission from the charge." (448 S.W.2d at p. 111). This is so, for as Justice Walker points out (p. 112):

"It is plaintiffs who would benefit from the submission of excuse issues in this case. It is they who would rely upon favorable findings thereon to avoid the legal consequences of conduct that would otherwise be regarded as negligent."

The concurring opinion in attempting to escape the clear holding in *Christy* falls into error in stating: "[W]e do not have a failure to submit 'excuse'; only at best an incomplete submission. It is this situation, in my judgment, the above quoted portion of Rule 279 is designed to cover." First: The submission of the excuse issue was not "incomplete"—it submitted completely the excuse for the violation of sub-section (d) and just as completely ignored the independent defense based upon sub-section (c). Secondly: The statement so made overlooks that part of Rule 279 which requires that the issues *actually submitted* be "necessarily referable" to the independent ground of recovery or defense. See: Hodges, Special Issue Submission in Texas, § 81, pp. 210–211 (1959); Hall v. Brown, 398 S.W. 2d 404, 407 (Tex.Civ.App., Waco, 1966, no writ).