**Floyd G. SLENTZ and Helen Slentz, Appellants,**

**v.**

**AMERICAN AIRLINES, INC., J.J. Security, Inc., and Mary Finau, Appellees.**

No. 3–89–245–CV.

Court of Appeals of Texas, Austin.

Aug. 14, 1991.

Rehearing Denied Oct. 16, 1991.

Rehearing Overruled Oct. 16, 1991.

Publication Granted Oct. 23, 1991.

James O. Guleke, II, Sneed, Vine, Wilkerson, Selman & Perry, Austin, for appellants.

Robert I. Howell, Baker & Botts, Austin, for appellees.

Before GAMMAGE, CARROLL and ABOUSSIE, JJ.

ABOUSSIE, Justice.

Appellants ask this Court to recognize a new right of action. They assert that an implied warranty of safe carriage emanates from a provider of air transportation services to its passengers.[1] They argue that, as a matter of public policy, the law should impose this implied warranty upon common carriers to protect travelers. Appellants acknowledge that no statute creates these

1. Appellants enumerate several obligations, but for purposes of discussion we will refer to them collectively as the implied warranty of safe carriage.

obligations and that no court in Texas or elsewhere has created or recognized the warranty at common law. For the reasons stated below, we decline appellants' invitation to be the first court to do so. We affirm the judgment of the trial court.

Appellants Floyd and Helen Slentz (the Slentzes) sued appellees American Airlines (American), J.J. Security, and Mary Finau, alleging that Floyd was injured when he was knocked down in the Dallas/Fort Worth Airport by an electric passenger cart owned by American Airlines, operated under contract by J.J. Security, and driven by its employee, Mary Finau. The Slentzes sued American, J.J. Security, and Finau, alleging acts of negligence and gross negligence. In addition, they sought to recover from American on theories of breach of contract, breach of implied warranties, and violation of the Texas Deceptive Trade Practices—Consumer Protection Act based on the breach of implied warranties. *See* Tex.Bus. & Com.Code Ann. §§ 17.41 *et seq.* (1987 & Supp.1991) (DTPA).

*Background*

On December 23, 1985, the Slentzes flew on an American Airlines plane from Oakland, California, to the Dallas/Fort Worth Airport, where they were to change planes in the American terminal. While walking to their assigned gate, Floyd Slentz, ninety-two years old, became separated from his wife. The Slentzes charged that, with the cart she was driving, Finau hit either Floyd or the bag of gifts he was carrying, causing him to fall. The injuries he suffered when he fell required a partial hip replacement.

■ Among their claims, the Slentzes sought recovery under the DTPA for American's alleged breach of its implied warranty of safe carriage. A breach of an implied warranty may give rise to a DTPA claim even though the DTPA does not create any warranties. *La Sara Grain v. First Nat'l Bank,* 673 S.W.2d 558, 565 (Tex.1984); DTPA § 17.50(a)(2); Alderman & Rosenthal, *A Consumer Update: Recent Developments Under the Texas Deceptive Trade Practices Act,* 20 St. Mary's L.J. 495, 509 (1989). The Slentzes alleged

that by agreeing to transport them American impliedly warranted, but failed, to do the following:

1. Safely carry or transport appellants to their destination;
2. Render special care and assistance necessary to ensure the safety of appellants;
3. Maintain its equipment and facilities in a safe condition suitable for appellants to occupy while awaiting transportation to their final destination;
4. Protect appellants from dangers and abuse caused by others; and
5. Exercise that high degree of care and diligence which it owes to its passengers for their safety.

American specially excepted to these allegations on the ground that Texas law does not recognize, in a common carrier/passenger relationship, the implied warranties the Slentzes urged. The trial court sustained the special exceptions and struck those portions of appellants' petition alleging breach of implied warranties and violation of the DTPA. Nevertheless, inquiries on these issues were submitted to the jury.

The jury failed to find that any party was negligent and refused to find that American had acted in a manner that violated any of the standards of safe carriage earlier enumerated. Based on this verdict, the trial court rendered a take-nothing judgment against the Slentzes and overruled their motion for new trial.

*Implied Warranty of Safe Carriage*

■ In their first two points of error, the Slentzes attack the trial court's actions granting American's special exceptions, striking the excepted portions of the Slentzes' pleadings, and denying the Slentzes an opportunity to amend. The trial court has broad discretion in ruling on special exceptions, and the ruling will not be disturbed on appeal absent an abuse of discretion resulting in harm. *Davis v. Quality Pest Control,* 641 S.W.2d 324, 328 (Tex.App.1982, writ ref'd n.r.e.)

■ The Slentzes complain that the trial court erred by sustaining American's special exceptions. They argue that compel-

ling public policy reasons exist for extending the theory of implied warranty recognized in other performance contracts to a provider of air transportation services. *See Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 352–54 (Tex.1987); Kriendler, Aviation Accident Law § 3.03 (1987). Although appellants contend that an implied warranty of safe carriage exists under Texas law, they acknowledge that no Texas court has ever discussed or recognized it.[2] Instead, the law has long held that a common carrier is not an insurer of the safety of its passengers but owes them that high degree of care that a very cautious, prudent, and competent person would use under the same or similar circumstances. *City of Dallas v. Jackson,* 450 S.W.2d 62, 63 (Tex.1970); *Delta Airlines, Inc. v. Gibson,* 550 S.W.2d 310, 312 (Tex.Civ.App. 1977, writ ref'd n.r.e.). We cannot say that the trial court abused its discretion by basing its ruling on existing law.

The Slentzes further complain that the trial court erred in striking their pleadings without giving them an opportunity to amend. Appellants' argument assumes the trial court denied them the opportunity to amend their pleadings. The trial court did not prevent them from exercising their right to amend, however, and they had time to do so as the trial was not set until several weeks after the hearing. Appellants amended their petition to add a new claim for recovery at the time of the hearing on American's exceptions and twice thereafter, but before trial, filed supplemental pleadings. Appellants do not invite our attention to any instance in which the trial court denied leave to amend.

■ The Slentzes' position is generally correct; a party should usually have an opportunity to amend a defective pleading. *See State v. Houdaille Industries,* 632 S.W.2d 723, 724 (Tex.1982). This is unnecessary, however, if the pleading defect is of a type that amendment cannot cure. *James v. Hitchcock Indep. School Dist.,* 742 S.W.2d 701, 704 (Tex.App.1987, writ den.); *Geochem Laboratories, Inc. v. Brown & Ruth Laboratories, Inc.,* 689

S.W.2d 288, 290 (Tex.App.1985, writ ref'd n.r.e.); *Jacobs v. Cude,* 641 S.W.2d 258, 261 (Tex.App.1982, writ ref'd n.r.e.). The crux of the Slentzes' complaint is that, for the first time, Texas should impose upon common carriers an implied warranty of safe carriage and should recognize a cause of action for its breach. Their pleadings were stricken because, under existing law, relief could not be granted on the cause asserted. Theirs was not a defect they could cure by amendment. Indeed, on appeal they do not suggest any different manner of stating their action but instead urge us to adopt their stricken allegations as the law.

■ Finally, error resulting from the trial court's ruling, if any, is not reversible because appellants cannot show that they suffered any resulting harm. Despite its pretrial ruling, the trial court admitted evidence on the issues and submitted questions to the jury concerning American's performance of each implied warranty, but the jury failed to find that American had acted negligently or breached any duty allegedly warranted. Even assuming appellants should have been permitted to plead an action for breach of the implied warranty of safe carriage, based on the stricken pleadings and the jury's verdict, the same judgment would have been rendered. In this instance, the trial court's submission of the charge cured any error. Appellants failed to convince the jury that American violated the standards appellants sought to impose. Therefore, appellants have not shown that any trial court error caused the rendition of an improper judgment. *See* Tex.R.App.P.Ann. 81(b)(1) (Pamph.1991). Because on this record we must uphold the trial court's judgment, we need not decide whether Texas recognizes an implied warranty of safe carriage. We overrule points of error one and two.

*The Slentzes' Remaining Point of Error*

In their third point of error, appellants state:

> The trial court erred in overruling plaintiffs' motion for new trial, because the

---

2. *See also Southwestern Bell Tel. Corp. v. DeLan-* *ney,* 809 S.W.2d 493 (Tex.1991).

negligence of Mary Finau, J.J. Security and American Airlines that proximately caused the occurrence in question and Floyd and Helen Slentz' damages (with the exception of their damages relating to their move from the cooperative apartment to the condominium), and attorneys' fees on appeal, were (A) established as a matter of law or (B) the jury's answers to the appropriate questions in the court's charge were against the great weight and preponderance of the evidence, so as to be manifestly unjust.

■ The appellants complain of the trial court's failure to grant them a new trial. The trial court enjoys broad discretion in ruling upon a motion for new trial. *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex.1988). The trial court's decision will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex.1984). Appellants have not made such a showing here.

■ To show that the trial court erred by not granting them a new trial, appellants complain that the evidence established appellees' negligence. They direct us to thirty-eight jury answers in response to parts of eight different questions inquiring about a variety of issues including both negligence and breach of warranty, as well as proximate cause, damages, and attorney's fees. To the extent they attempt in a single point to complain about the legal and factual sufficiency of the evidence to support multiple grounds of recovery, the point is multifarious. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 823 (Tex.App.1986, writ ref'd n.r.e.); Tex.R.App.P.Ann. 74(d) (Pamph.1991). To the extent their complaint relates only to recovery for alleged negligence, their argument fails.

■ The Slentzes, of course, had the burden of proof on these issues. Where a party has the burden to prove a fact, no affirmative evidence is required to support its nonexistence or to permit a negative finding on the issue. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973); *Bell v. Buddies Super–Market*, 516 S.W.2d 447, 451–52 (Tex.Civ.App.1974, writ ref'd n.r.e.).

In reviewing a legal sufficiency point complaining that the jury failed to find a fact, the court first will consider only evidence and reasonable inferences drawn from that evidence in the light most favorable to the verdict, disregarding all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We may sustain the challenge only if, after examining all the evidence, we determine that there is no probative evidence to support the verdict and further find that appellants established the contrary as a matter of law. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). We may sustain a point of error challenging the factual sufficiency of the evidence supporting a non-finding only if, after considering all the evidence, we determine that the jury's answer is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *see* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

The jury was asked whether appellees were negligent and whether American committed any of the acts appellants alleged; as to each inquiry, it answered "no." Proof concerning the facts was disputed, and the record contains probative evidence from which the jury could have declined to find facts imposing liability on appellees.

■ Briefly, the record reveals that Floyd Slentz was ninety-two years old at the time of the accident. He suffered from a variety of medical conditions that affected his steadiness and ability to walk. At the time of the accident, Floyd suffered from high blood pressure, angina, blockage of the neck arteries, chronic dizziness and intense pressure in his head, degeneration of the dorsal spine, cataracts, glaucoma, degeneration of the retina, hearing loss, and periods of difficulty with tandem walking, *i.e.*, sometimes when he wanted to walk forward, he would instead step from side to side. There also was evidence that, by the time of the accident, Floyd had a history of serious falls: at different times, he had injured his left buttock and his right

hip, cut his left hand, and broken his right hand.

The incident occurred on one of the airline's busiest days of the year. The terminal was very crowded, and people hurrying past him pushed and bumped Floyd as he walked. At the time of the accident, Floyd was carrying a bulky bag of Christmas presents and personal items; he was not using a cane.

In addition, the record contains evidence that Mary Finau looked around her before starting her cart, applied her horn, drove slowly, and yelled at people in the terminal to get out of her way. There was evidence that she knew how to drive and that she had been trained in her duties by J.J. Security's predecessor. Although Floyd's testimony suggested a "face to face" confrontation in which he was struck by the front of the cart as it came toward him, an eyewitness seated nearby had a different version. He testified that, just before the accident, the cart had stopped beyond Floyd to let people on and off; Floyd stood facing the cart near its right rear wheel. Finau started the cart and drove forward. The witness did not know whether Floyd may have been hit by the rear of the cart as it started or fell trying to move away. Floyd was on the floor behind and to the right of the cart immediately after he fell.

Applying the proper standards of review, we find that the evidence was legally and factually sufficient to support the challenged jury findings. Accordingly, the trial court did not abuse its discretion in overruling the Slentzes' motion for a new trial. We overrule the third point of error.

Because we have overruled all of the Slentzes' points of error, we need not address American's cross-point. The judgment of the trial court is affirmed.

Gammage, J., not participating.