CITY OF SAN ANTONIO

v.

Abraham RODRIGUEZ and
Alicia Rodriguez.

No. 04–90–00599–CV.

Court of Appeals of Texas,
San Antonio.

May 26, 1993.

Rehearing Denied June 22, 1993.

Lowell F. Denton, Denton, McKamie & Navarro, Sarah B. Duncan, Fulbright & Jaworski, San Antonio, for appellant.

Les Mendelsohn, Randall C. Jackson, Jr., Speiser, Krause, Madole & Mendelsohn, San Antonio, for appellees.

Before REEVES, C.J., and CHAPA and RICKHOFF, JJ.

**554**

OPINION ON APPELLANT'S MOTION
FOR REHEARING

CHAPA, Justice.

The motion for rehearing is partially granted. Our previous opinion of March 10, 1993 is withdrawn, and the following is substituted.

Appellant, City of San Antonio, appeals a judgment rendered in favor of appellees, Abraham and Alicia Rodriguez, who sued the city for the wrongful death of their daughter, Sandra Rodriguez.

On June 3, 1987, Sandra Rodriguez was driving on West Laurel Street in San Antonio. Because the city had experienced heavy rains, San Pedro Creek, an underground drainage culvert beneath the street, had overflowed with water and flooded a low water point on West Laurel. The site was neither barricaded nor marked as a low water crossing. Rodriguez's vehicle got caught in the current flowing over the street and was forced into the culvert, where Rodriguez drowned.

█ A lawsuit was filed against the city, alleging the causes of action of nuisance and premises defect caused by negligence and gross negligence of the city. In a twenty-six page petition, appellees contended, among others, that the city failed to properly design or construct West Laurel Street, failed to maintain West Laurel Street in a reasonably safe condition for motorists, and failed to properly construct and maintain San Pedro Creek as a drainage culvert. Some examples of a premises defect that appellees asserted were the city's failure to put up warning signs or a flood gauge, the city's failure to install guardrails, posts or other similar devices to prevent vehicles from being pushed into San Pedro Creek, the city's failure to elevate the low level of West Laurel Street, the city's failure to put up temporary barricades to warn of the hazardous condition, and the city's failure to fix the storm sewer system of San Pedro Creek to prevent it from overflowing. No special exceptions

were found in the record. Therefore, the pleadings must be liberally construed in favor of the pleader.[1] *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex.1977).

At trial, the jury answered affirmatively to the following questions that appeared in the jury charge:

**Question 1**

On the occasion in question, did defendant CITY OF SAN ANTONIO have actual knowledge or constructive notice of a condition on West Laurel Street that presented an unreasonable risk of physical harm to SANDRA RODRIGUEZ?

**Question 2**

On the occasion in question, did defendant CITY OF SAN ANTONIO commit any negligent act or omission which was a proximate cause of the drowning death of SANDRA RODRIGUEZ?

**Question 3**

On the occasion in question, did defendant CITY OF SAN ANTONIO through its design, construction, location and/or maintenance of West Laurel Street at its intersection with and/or over San Pedro Creek create or maintain a nuisance which was a proximate cause of the drowning death of SANDRA RODRIGUEZ?

**Question 6**

On the occasion in question, did any of the persons listed below while acting as a policymaking official of defendant CITY OF SAN ANTONIO commit one or more intentional, willful, wanton, or grossly negligent acts so as to indicate maliciousness or evil intent by that policymaking official?

—Frank Kiolbassa
—Johnny Krawczynski
—Robert Hahn
—Jesse Castro

The jury assessed twenty-five percent of the fault against Sandra Rodriguez and

---

1. The docket sheet reflects the following: "07/25/90 ORDER DENYING CITY'S SPECIAL EXCEPTIONS." However, because no special exceptions were found in the record, we are unable to determine whether some of the complaints on appeal were addressed in the special exceptions and must therefore liberally construe the pleadings.

seventy-five percent of the fault against the city. The Rodriguezes' damages were awarded as follows:

—$300,000.00 to Abraham for past and future damages, plus $80,465.75 in pre-judgment interest;

—$225,000.00 to Alicia for past and future damages, plus $60,349.32 in pre-judgment interest;

—$379,500.00 to Abraham and Alicia, as representatives of the estate of Sandra Rodriguez, for past compensatory damages, plus $101,789.18 in pre-judgment interest; and

—$500,000 to Abraham and Alicia, as representatives of the estate of Sandra Rodriguez, for punitive damages, plus $134,109.59 in pre-judgment interest.

The final judgment awarded a total of $1,781,213.84, plus post-judgment interest at ten percent per year until paid.

■ We first note that the final judgment in this case was not granted on specific grounds. Where a judgment rests on multiple theories of recovery and one of those theories is valid, a court of appeals need not address the other causes of action. *See Burkart v. Health & Tennis Corp. of America,* 730 S.W.2d 367, 371 (Tex.App.—Dallas 1987, no writ); *Hixson v. Pride of Texas Distr. Co.,* 683 S.W.2d 173, 180 (Tex.App.—Fort Worth 1985, no writ). "As a fundamental matter, questions unnecessary to a proper disposition of an appeal are not discussed." *Liquid Energy Corp. v. Trans–Pan Gathering, Inc.,* 758 S.W.2d 627, 642 (Tex.App.—Amarillo 1988), *vacated on other grounds,* 762 S.W.2d 759. Therefore, we will only address those issues that are dispositive of this case including the premises defect cause of action which will sustain this judgment. TEX.R.APP.P. 90(a). Moreover, be-

cause most of appellant's points of error are multifarious, in the interest of justice we will only address the dispositive points as we perceive them.[2] TEX.R.APP.P. 74(d) & 90(a).

The issues before this court are:

1) whether this case is governed by the Amended Tort Claims Act;

2) whether the premises defect questions submitted in the jury charge were proper;

3) whether the exemplary damages issue submitted in the jury charge was proper;

4) whether the court erred in admitting an out-of-court statement;

5) whether sufficient evidence exists to support a finding of gross negligence; and

6) whether appellees sufficiently established their standing to sue as representatives of Sandra Rodriguez's estate.

Initially, appellant contends that the Amended Texas Tort Claims Act[3] applies with regard to the premises defect cause of action. Appellant maintains that at the most it is only liable to appellees for a premises defect arising out of the performance of a "governmental function," and thus, appellees' recovery of damages is limited by the Amended Tort Claims Act. Appellees insist, however, that the former Tort Claims Act[4] controls. In response to appellees' motion to declare applicable law, the trial court ruled that the former Tort Claims Act applies to this case.

Municipal activities are either categorized as governmental or proprietary. A proprietary activity is defined as "one intended primarily for the advantage and benefit of persons within the corporate limits of the municipality rather than for use

**2.** Because an appellant court cannot accept the burden of deciphering all potential points of error from the parties' briefs, the rules concerning multifarious points of error control. Tex. R.App.P. 74. "A point of error is multifarious if it embraces more than one specific ground of error, or it attacks several distinct and separate rulings of the court." *Clancy v. Zale Corp.,* 705 S.W.2d 820, 823 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). A court "may disregard any assignment of error that is multifarious." *Id.* at 824.

*See also Slentz v. American Airlines, Inc.,* 817 S.W.2d 366, 370 (Tex.App.—Austin 1991, writ denied).

**3.** Amended Tort Claims Act, 70th Leg., 2nd C.S., ch. 2, 1987 Tex.Gen.Laws 37 (codified at Tex. Civ.Prac. & Rem.Code Ann. §§ 101.001–.109).

**4.** Tort Claims Act, 61st Leg., R.S., ch. 292, 1969 Tex.Gen.Laws 874.

**556**

by the general public." *City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex.1987).

■ The doctrine of sovereign immunity does not apply to proprietary functions. Therefore, a plaintiff suing a municipality for harm arising out of a proprietary action is not limited by the amount of possible recovery. *City of Houston v. Bush*, 566 S.W.2d 33, 34–35 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). The same plaintiff may also sue the municipality for exemplary damages when intentional, willful or grossly negligent conduct is established. *City of Gladewater v. Pike*, 727 S.W.2d at 522.

■ By contrast, a municipality may not be sued for the performance of a governmental function due to the doctrine of sovereign immunity, unless waived by constitutional or statutory authority. *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). The Amended Tort Claims Act, which appellant insists is applicable, has waived immunity with respect to certain governmental functions. TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215 (Vernon Supp. 1993). However, under the Amended Tort Claims Act, the amount of damages in this case would be limited to $250,000.00. *Id.*, § 101.023 (Vernon 1986).

■ In 1987, the Texas Legislature amended the Tort Claims Act which took effect on September 2, 1987. Both versions of the Act only cover governmental activities and do not apply to proprietary functions. However, the Amended Tort Claims Act provided new definitions for governmental activities, categorizing activities formerly deemed proprietary as governmental. Appellant concedes that "street, bridge, and storm sewer construction and maintenance, as well as the duty to warn of defects in and adjacent to city streets, were classified as proprietary functions" under the former law.[5] *See, e.g., Jezek v. City of Midland*, 605 S.W.2d 544, 546 (Tex.1980); *Turvey v. City of Houston*, 602 S.W.2d 517, 518 (Tex.1980); *City of San Antonio v. Hamilton*, 714 S.W.2d 372, 374 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). Under the Amended Tort Claims Act, however, these activities are now defined as governmental functions. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(a)(3), (4), (9), (20), (31) (Vernon Supp. 1993). Therefore, these newly-defined activities are no longer classified as proprietary, *Id.*, § 101.0215(c), and are now subject to the limits of recovery spelled out in the Amended Tort Claims Act. *Id.*, § 101.023.

The new law provides that any lawsuit filed on or after September 2, 1987—the date the Amended Tort Claims Act took effect—is governed by the Amended Tort Claims Act. In this case, appellees filed written notice of their lawsuit with the city clerk of San Antonio on August 31, 1987 pursuant to the notice requirement of the city charter,[6] but did not file this lawsuit until after September 2, 1987.

However, the Amended Tort Claims Act also states in a savings clause[7] that any action in which notice is delivered before September 2, 1987 pursuant to a statute requiring written notice makes the lawsuit subject to the former version of the Tort Claims Act, so long as the suit is eventually

---

5. While appellant concedes that the duty to warn of defects on a street is a proprietary act under the former Tort Claims Act, it provided this court with a copy of *Villarreal v. City of San Antonio*, 657 S.W.2d 175 (Tex.App.—San Antonio 1983, no writ), during oral arguments in what appears to be a contradictory assertion that the duty to erect barricades on a street was governmental under the former law. Nevertheless, *Villarreal* is distinguishable from the present case in two respects. First, the plaintiff's claim in *Villarreal* against San Antonio for proprietary liability was barred because she failed to give proper notice. *Id.* at 177. Thus, the case

turned to the issue of whether governmental liability existed. *Id.* Second, *Villarreal* limited its ruling to situations involving barricades to mark the end of a street, which is a function of regulating traffic. *Id.* In the present case, the use of barricades during flooding would serve as a warning against defective conditions, rather than as a tool to regulate city traffic.

6. San Antonio City Charter § 150.

7. Found at Amended Tort Claims Act, 70th Leg., 2nd C.S., ch. 2, § 4.05, 1987 Tex.Gen.Laws 37, 51.

filed within 120 days thereafter.[8] In this case, the lawsuit was filed within the 120 day period on December 24, 1987.

We agree with the trial court's ruling that appellees' delivery of notice made the Tort Claims Act in effect before September 2, 1987 the applicable law in this case. Appellant insists, however, that the savings clause of the Amended Tort Claims Act does not pertain to notice provisions of city charters because the notice is not compelled by statute. Appellant thus argues that delivery of notice before September 2, 1987 did not put this cause of action under the former law. We disagree.

In deciding whether a procedural statute is applicable to the provisions of a home rule charter of a municipality, an appellate court cited to the United States Supreme Court as authority for the proposition that city charter provisions or city ordinances are comparable to statutes. *Nunn v. New*, 222 S.W.2d 261 (Tex.Civ.App.—Galveston 1949), *rev'd on other grounds*, 148 Tex. 443, 226 S.W.2d 116 (1950). The court noted that "an ordinance ... was as much as a statute as a legislative enactment" and that "the provisions of a home rule charter are of equal dignity with statute." *Id.* at 265–66. *See also* 52 TEX.JUR.3d *Municipalities* § 296 (1997) ("The powers granted to a home rule city are similar to those conferred on the state legislature, and ... the power to act is as general and broad as is the power of the legislature."). Moreover, a court will construe a city charter so that it will be upheld rather than nullified. *Tone v. City of Denison*, 140 S.W. 1189 (Tex.Civ.App.—Dallas 1911, no writ). Considering that many notice provisions are issued by municipalities, we can think of no reason why the legislature would purposely exclude from the savings clause a lawsuit in which the notice was tendered pursuant to the laws of a governmental entity other than the Texas Legislature. Therefore, we find that notice in this case was "statutorily required" by the city charter.

Appellant nevertheless contends that because the city had actual notice of the drowning, the written notice requirement of the city charter was unenforceable, and thus, notice was not "statutorily required." Whether or not the city has actual notice of an event does not eliminate the fact the city charter required written notice. *See City of Houston v. Turvey*, 593 S.W.2d 766, 768 (Tex.App.—Houston [1st Dist.] 1979), *aff'd*, 602 S.W.2d 517 (Tex.1980). Further, appellant fails to establish that an actual notice exception exists in the city charter, and a review of the charter reflects that none in fact exists. We conclude the city charter "statutorily required" written notice, which was fulfilled by appellees. Consequently, the trial court correctly applied the former Tort Claims Act in effect at the time of the accident, classifying the municipal functions complained of as proprietary.

Even ignoring the foregoing analysis, we note that appellant, by asserting that the Amended Tort Claims Act controls, appears to vaguely challenge the trial court's ruling on the motion to declare applicable law. We note, however, that no point of error was raised in the brief contesting this ruling. Therefore, because no point was raised or briefed, nothing is preserved for appeal. TEX.R.APP.P. 74(d).

■ The next dispositive issue is whether the questions in the jury charge regarding the premises defect were correct. The trial court has wide discretion in determining the proper issues and instructions to be submitted to the jury. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 255 (Tex.1974); *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 557 (Tex.1972). Simplicity

---

**8.** *Id.* The savings clause specifically reads in pertinent part:

(b) If all or any part of a suit is filed before the effective date of this Act, the entire suit shall be governed ... by the applicable law in effect before that date....

(c) In actions in which a statute requires that a written notice be given to any person or entity prior to filing suit, the delivery of any such notice or the depositing of such a notice ... before the effective date of this Act shall constitute the filing of suit for purposes of this section, provided that the suit is filed within 120 days after the notice is delivered or mailed, and such suits shall be governed ... by the applicable law in effect before that date....

in the jury charge must be an overriding concern. *Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984). A charge is erroneous when it confuses and misleads the jury. *H.E. Butt Grocery Co. v. Johnson*, 226 S.W.2d 501, 504 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.). "[I]t is error to burden the jury with excess instructions which emphasize extraneous factors to be considered in reaching a verdict." *First Int'l Bank in San Antonio v. Roper Corp.*, 686 S.W.2d 602, 605 (Tex.1985). "A judgment should not be reversed because of the failure to submit other and various phases or different shades of the same question." *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.*, 794 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1990, writ denied); TEX.R.CIV.P. 278.

■ Further, it is the duty "of the trial court in submitting issues to the jury: First, to submit all the controverted fact issues made by the pleadings; second, to submit each issue distinctly and separately, avoiding all intermingling; and third, to give such explanation and definition of legal terms as shall be necessary to enable the jury to answer each issue." *Texas & Pac. Ry. Co. v. Davis*, 374 S.W.2d 305, 310 (Tex.Civ.App.—El Paso 1963, writ ref'd n.r.e.). TEX.R.CIV.P. 271, 272, 273. Therefore, what explanations and definitions of legal terms may be necessary to enable the jury to answer each issue is within the sound discretion of the court. Consequently, reversal will not lie because of an instruction being included or refused, in the absence of a showing of a clear abuse of discretion.

As to the premises defect questions, appellant lodges a complaint about Question 2, arguing that it should have properly instructed on whether there was negligence in either the city's proprietary activities or governmental activities. However, the pleadings allege that under the former Tort Claims Act, the harmful activities would have stemmed from proprietary acts, a contention with which appellant agreed in its brief. In light of the ruling that the former Tort Claims Act applied, which was not challenged until after the charge was given to the jury according to the record, it was unnecessary to distinguish between proprietary and governmental acts since under the former Tort Claims Act, the acts complained of would be considered proprietary. Therefore, the attempt to distinguish would have served to confuse and mislead the jurors.

■ Appellant also complains about Question 1, which asks about whether the city had actual or constructive notice of the premises defect. Appellant contends appellees failed to demonstrate that Sandra Rodriguez was an invitee, and thus, the city could not be liable for a premises defect arising out of the performance of a proprietary function. Appellant misplaces its reliance on *State Department of Highways and Public Transportation v. Payne*, 34 TEX.SUP.CT.J. 793 (Sept. 11, 1991) (withdrawn on rehearing and substituted with *State Department of Highways and Public Transportation v. Payne*, 838 S.W.2d 235 (Tex.1992)), as support for its arguments.

Contrary to appellant's argument, the *Payne* cases place no burden on the claimant to establish the status of an invitee, but merely described the state's duty to warn of certain types of hazards arising from governmental acts as being similar to the duty owed by a private landowner to an invitee. 838 S.W.2d at 237; *see also Harris County v. Eaton*, 573 S.W.2d 177, 180 (Tex.1978). Moreover, the instant case does not involve governmental functions in the first place.

In addition, whether Sandra Rodriguez was an invitee is irrelevant in this situation. If the duty owed to Sandra Rodriguez were similar to that owed to an invitee, the city would be liable for defects of which it either had *actual* or *constructive* notice. On the other hand, if the duty were similar to that owed to a licensee, the city would only be liable for defects of which it had *actual* notice. Under either duty, we find appellant was liable for a premises defect because it was clearly established appellant had actual knowledge of the defect before Sandra Rodriguez's fatal accident. Appellant's brief concedes the city was aware of

the hazard on West Laurel Street. For example, appellant acknowledges that the city was aware that the culverts in the area of the accident were inadequate to handle floodwater, that the area had been slated for capital improvements, that the hazard on West Laurel Street was known to the city, that the city had received complaints regarding the area in question, and that there had been at least one prior flood-related incident resulting in death to a passer-by.

With respect to Questions 1 and 2, appellant contends that appellees failed "to distinguish between simple negligence and premise defect theories of liability." Appellant insists that "Question 2 was not, in any way, tied to a condition found in response to Question 1." By contrast, appellees deny they presented a separate cause of action based on negligence, but contend instead that "[j]ury questions one and two together are a standard premises defect charge in compliance with *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983)." We agree. The pleadings here do not allege that Sandra Rodriguez was killed as the result of negligent activity of appellant other than under the premises defect theory. *See Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985); *Abalos v. Oil Dev. Co. of Texas*, 544 S.W.2d 627, 631 (Tex.1976). Therefore, the question regarding negligence is exclusively tied to the premises defect question. Questions 1 and 2 properly incorporate the four elements of premises liability as stated in *Corbin.*

Because the former Tort Claims Act applies to this lawsuit, the defect at hand and the duty to warn are classified as proprietary functions, hence excluding this cause of action from the limits of the Tort Claims Act. As discussed above, the form of Questions 1 and 2 was not incorrect, and the jury's response to these questions supports the finding of premises defect liability. Because we find this judgment can be sustained on the premises defect theory alone, we decline to address the nuisance cause of action. TEX.R.APP.P. 90(a); *Burkart v. Health & Tennis Corp. of America*, 730 S.W.2d 367, 371 (Tex.App.—Dallas 1987, no writ). Appellant's initial complaint is overruled.

■ Appellant's next multifarious complaint contends the exemplary damages issue submitted to the jury in Question 6 was improper. Specifically, appellant asserts that the question did not require the jury to find that one of the city's "policymakers" acted with "malice or evil intent," which appellant says is required to support a special issue on exemplary damages. *See City of Gladewater v. Pike*, 727 S.W.2d 514, 525 (Tex.1987). Furthermore, appellant inserts a second complaint, insisting none of the policymakers listed in Question 6 were "policymakers" *as a matter of law.* Therefore, it appears reasonable to assume that appellant is not only complaining that the issue failed to require a finding of malice, but also that the issue is defective because *as a matter of law* the listed individuals were not policymakers, reasserting appellant's repeated insistence that only the city council members can be policymakers. We disagree.

In *City of Gladewater v. Pike*, the supreme court summarized the test for imposing exemplary damages upon a municipality by holding, "[I]n order to recover the plaintiff must show at least that amount of conscious indifference which would tend to show malice or evil intent on the part of the actor." *Id.* at 523. The supreme court also discussed a municipality's liability when tortious conduct is committed by individual policymakers, stating:

> To impute tortious actions to the City, it must be shown that the acts were expressly authorized by the municipal government or that they were done "bona fide in pursuance of *general authority to act for the municipality on the subject to which they relate.*" ... Liability must rest on official policy, meaning on the city government's policy, and not on the policy of an individual official. The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority.... *Policymakers act in the place of the governing body*

*in the area of their responsibility; they are not supervised except as to the totality of their performance.* [Emphasis added.]

*Id.* at 523.

The record reflects that the following question and definition were submitted to the jury:

**Question 6**

On the occasion in question, did any of the persons listed below while acting as a *policymaking official* of defendant CITY OF SAN ANTONIO commit one or more *intentional, willful, wanton, or grossly negligent acts so as to indicate maliciousness or evil intent* by that policymaking official?

—Frank Kiolbassa

—Johnny Krawczynski

—Robert Hahn

—Jesse Castro

[Emphasis added.]

**Definitions**

1. "Policymaking official" means an official which defendant CITY OF SAN ANTONIO has given *authority to act or to make policy.* City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. *Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance.* [Emphasis added.]

After reviewing the jury charge, contrary to appellant's complaint, we find that Question 6 and its accompanying definition complied with the test for liability and the definition of policymaker as set forth in *City of Gladewater v. Pike.* Furthermore, we find sufficient evidence and reasonable inferences exist to raise a fact issue as to whether the listed individuals were policymakers, thereby justifying the question submitted as a matter of fact to the jury. Based on the jury's response to this issue, the jury evidently concluded at least one of the listed officials was a policymaker under the definition adopted from *City of Gladewater.* Therefore, the trial court did not abuse its discretion in submitting Question 6 to the jury. *See Texas Dep't of Human Services v. E.B.,* 802 S.W.2d 647, 649 (Tex. 1990).

Next, appellant contends that the trial court erred in admitting hearsay testimony. Appellant's complaint relates to the testimony of David Steitle, the city's director of public works at the time of the accident. Steitle discussed how he conducted an investigation after Sandra Rodriguez's death to find out why West Laurel Street was never properly marked as a low water crossing. He testified that his investigation disclosed that although Tom Vorpahl, a former drainage technician in the drainage engineering section of the public works department, knew West Laurel Street was a low water crossing, Vorpahl was nevertheless told by Frank Kiolbassa, the former director of public works, not to put a sign there when Vorpahl inquired about it.

Appellant contends that the statement was double hearsay and, thus, was improperly admitted. Specifically, appellant argues that the statement could not be admitted as an admission by a party-opponent under Texas Rules of Civil Evidence 801(e)(2)(C) and 801(e)(2)(D) because "[t]he subject of the alleged statement simply was not a matter within the scope of Vorpahl's employment with the City or a matter about which he was authorized to speak for the City." As support, appellant cites *Dallas County Water Control and Improvement District v. Ingram,* 395 S.W.2d 834, 842 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.), which says that "[s]tatements of [a public] officer will not be admitted if not made within the scope of the declarant's official duties and authority and in the reasonable discharge thereof."

First, we note that Vorpahl made his statement in response to an investigation conducted by Steitle in the scope of his employment. As an employee working under Steitle, it was Vorpahl's official duty to respond truthfully to Steitle's inquiry. It was irrelevant that Vorpahl had moved to another division within public works by the time of the accident. Steitle oversaw all the divisions within public works, and Vor-

pahl was not only authorized but required by the scope of his employment to truthfully respond about his previous work in drainage engineering. Second, the issue of whether West Laurel Street was properly marked was clearly within Vorpahl official duties when employed in the drainage engineering section, a department assigned with the task of identifying flood-prone areas for the city. Third, although appellant does not specifically complain about Kiolbassa's statement, Kiolbassa, as the former director of public works, was unquestionably authorized to speak about marking West Laurel Street as a low water crossing. Appellant has failed to show how the trial court erred in admitting Steitle's testimony. Appellant's complaint is overruled.

■ Finally, appellant contends "[t]here is no evidence or legally insufficient evidence of 'malice or evil intent' or 'utter disdain,' as required by *City of Gladewater v. Pike.*" In considering the "no evidence" or legal sufficiency point, this court may consider only the evidence and reasonable inferences favorable to the decision of the trier of fact and disregard all evidence to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ Exemplary damages are awardable if the plaintiff sufficiently proved grossly negligent conduct of policymakers. *City of Gladewater v. Pike,* 727 S.W.2d at 523. Consistent with its repeated insistence, appellant argues that appellees were required to establish that the city council members themselves acted with malice or evil intent in order to prove gross negligence. In this respect, appellant contends "[t]here was no evidence before the jury that any City Council member was aware that the intersection of West Laurel and La Harpe was not designated as a low-water crossing; that it was not marked as a low-water crossing; or that it was not barricaded during flood events. The uncontroverted evidence is to the contrary. Under these circumstances, there simply is no evidence that the City's policymaking body demonstrated 'evil intent or malice' or an

'utter disdain' for the protection of the City's citizens during flood events."

Appellant concedes that "the City's staff admitted to making a very serious, but inadvertent, mistake: they failed to designate the Five Points area and, in particular, the intersection of West Laurel and La Harpe as a low-water crossing. As a result, the intersection was not marked or barricaded. Given the history of the Five Points area, that mistake may satisfy the *Burk Royalty [Co. v. Walls,* 616 S.W.2d 911 (Tex.1981) ] gross negligence test ... It does not, however, show the 'utter disdain' or 'malice or evil intent' required by [*City of Gladewater v.] Pike.*"

In *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex.1981), the supreme court reiterated the well-established definition of gross negligence. It said gross negligence exists when there is an "entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Id.* at 920. *See also Baldwin v. Texas Utilities Elec. Co.,* 819 S.W.2d 264, 266 (Tex.App.—Eastland 1991, writ denied); *General Chem. Corp. v. De La Lastra,* 815 S.W.2d 750, 756 (Tex. App.—Corpus Christi 1991, writ granted); *Deerings W. Nursing Ctr. v. Scott,* 787 S.W.2d 494, 496 (Tex.App.—El Paso 1990, writ denied).

In *City of Gladewater v. Pike,* 727 S.W.2d 514 (Tex.1987), the supreme court again invoked conscious indifference with regard to gross negligence, but stated the following:

The court of appeals in the present case cited *Burk Royalty* for the proposition that "gross negligence may result from a series of negligent acts or omissions and many circumstances and elements may make up indifference amounting to gross negligence." [Cites omitted.]

In the context of exemplary damages against a municipality, however, we agree with the reasoning used by the Fifth Circuit in *Peace v. City of Center,* 372 F.2d 649 (5th Cir.1967). There the

court held that liability will result only if it is "pleaded and proved that the acts giving rise to the claim were committed with such malice or evil intent, or such gross negligence as to be equivalent to such intent." *Peace* at 650. *Thus, in order to recover [for exemplary damages] the plaintiff must show at least that amount of conscious indifference which would tend to show malice or evil intent on the part of the actor.* [Emphasis added.]

*Id.* at 523. *See also Schneider v. City of Cuero,* 749 S.W.2d 614, 618 (Tex.App.—Corpus Christi 1988, writ denied). The crux of appellant's argument is that there was no evidence of conscious indifference "which would tend to show malice or evil intent" on the part of any city council member.

As we addressed in our discussion on policymakers above, appellees did not have to prove city council members behaved with malice or evil intent. The definition of policymaking official, as found in *City of Gladewater v. Pike,* has the potential to encompass a wide array of city employees besides members of the governing city council. *Id.* at 523. In the present case, the jury found that at least one of the four persons listed in Question 6 was a policymaking official and that his conduct tended to show malice or evil intent. For example, Frank Kiolbassa and Robert Hahn ranked high in their positions in the San Antonio city government. Frank Kiolbassa served as the city's director of public works. His duty was to maintain city streets and storm sewers. He also coordinated the city's efforts to identify low water crossings in San Antonio. Robert Hahn, as head of the drainage division in public works, was the city's engineer. One of his responsibilities was investigating and inspecting low water crossings. He determined the criteria for designating low water crossings, and he compiled the lists used by public works to maintain and barricade low water crossings. There is no doubt that these two men had the authority to act or to make policy within the given spheres of their responsibilities. Thus, their actions were done "in pursuance of

general authority to act for the municipality" and could be imputed to the city. It was not necessary for appellees to show the city council members themselves acted with gross negligence, and there was evidence that at least some of the listed individuals were policymaking officials.

Furthermore, we disagree that no evidence in the record exists which would justify the jury finding as to gross negligence under the *City of Gladewater v. Pike* test. The evidence and reasonable inferences generally establish the following. San Pedro Creek, West Laurel Street, and the surrounding "Five Points" area was certainly known by the city for decades to be prone to flooding. The policymakers in particular were also aware of the flooding problems in the Five Points area and with San Pedro Creek. The city recognized the need to fix streets prone to flooding and even created several task forces over the years to devise solutions for the flooding problem of the Five Points area. None of these task forces managed to change the decades-old condition of West Laurel Street. The operations manager of the street and drainage maintenance division of public works acknowledged that San Pedro Creek was not designed to handle the floodwaters that regularly swept into the creek during rain storms for decades.

When funding was unavailable for capital improvements, the city nevertheless recognized the need to warn about flooding conditions or to set up barricades. The city continuously received complaints over the years for failing to put up barricades in Five Points, but failed to barricade West Laurel Street in this instance. The city's former mayor acknowledged that the city was inattentive to the flooding problems in the Five Points area. The city failed to put West Laurel Street down on its list of low water crossings due to oversight, even though it conceded that it should have done so. An expert witness testified the city was grossly negligent in not marking the area as a low water crossing. A city council member testified the city had the financial resources at the time of this accident to

mark the area as a low water crossing. Nonetheless, the site was not designated as a low water crossing until April of 1988, ten months after Sandra Rodriguez's death.

A city employee testified that barricades were not normally put up in the Five Points area in advance of bad weather because by the time city employees reached a flood site, the floodwater had usually receded. The record also shows that the city had received specific complaints regarding the intersection where Sandra Rodriguez had died prior to the accident.

It was well-known that in 1983 a woman had died from a similar accident a few hundred feet from the intersection in question. After that incident, the city installed posts with wire cables around the site of the 1983 accident, but failed to take any protective measures along other parts of San Pedro Creek even though the condition of West Laurel Street and La Harpe Street was almost identical to the low-lying condition of the area where the 1983 accident occurred.

Finally, David Steitle, the director of public works testified that Tom Vorpahl, a city employee, had asked the former director whether a sign should be placed at West Laurel Street to mark it as a low water site. Steitle testified that Vorpahl was told not to place a warning sign at the location.

Appellees' burden, as set forth in *City of Gladewater v. Pike*, was to demonstrate that amount of conscious indifference which would *tend to show* malice or evil intent. Appellant concedes that the acts of the city were probably enough to show conscious indifference under *Burk Royalty*, but insists that the acts were insufficient to meet the conscious indifference test in *City of Gladewater*. However, after applying the appropriate standard, we hold that the evidence and reasonable inferences support the jury's finding of gross negligence, which was based upon the con-

scious indifference standard enunciated in *City of Gladewater*. Appellant's complaint regarding exemplary damages is denied.

Finally, appellant contends, and appellees concede, that the trial court erred in awarding *prejudgment interest on exemplary damages. See* TEX.CIV.PRAC. & REM.CODE ANN. § 41.006 (Vernon Supp.1992). Therefore, this court orders the judgment award reduced by the amount imposed as prejudgment interest on exemplary damages. The point is granted.

On rehearing, appellant raises three new points of error. Appellant generally contends that certain damages awarded by the court were improper because appellees failed to establish standing to sue as representatives of the estate of Sandra Rodriguez. The judgment shows that Abraham and Alicia Rodriguez received damages as representatives of the estate for the pain and mental anguish that Sandra Rodriguez suffered before her death and for Sandra Rodriguez's funeral and burial expenses. The appellees also received exemplary damages as representatives of the estate, which would otherwise not have been awardable to them personally under a wrongful death cause of action. *See General Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 921 (Tex.1993) (parents of the decedent may not recover punitive damages for wrongful death).

■ Appellant specifically complains that appellees failed to plead and prove their standing to sue as representatives of the estate, which they say is necessary in order to recover damages accruing to the estate. Standing is a jurisdictional question and can be raised for the first time on appeal. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).[9] Therefore, we address these points of error on rehearing.

Initially, we note that the authorities cited by appellant are distinguishable from the present case and do not lend support for the proposition that appellees here

---

**9.** We recognize *Texas Association of Business* dealt with the situation in which the reviewing court raised the issue of standing, not one of the appealing parties. However, because the su-

preme court underscored the fundamental nature of the question, it follows that the issue must be addressed when a party assigns lack of standing as error.

must plead and prove their status as representatives to recover damages for Sandra Rodriguez's estate. Three of the cases cited by appellant dealt with suits in which heirs sought recovery of property they claimed should descend to them. The courts held that for an heir to bring such an action within the period allowed for an administration of an estate, the heir must plead and prove no administration of the decedent's estate is pending and that none was necessary. *See White v. White*, 142 Tex. 499, 179 S.W.2d 503, 506 (1944); *Williams v. Williams*, 108 S.W.2d 297, 299 (Tex.Civ.App.—Amarillo 1937, no writ); *Moore v. Blackwell*, 85 S.W.2d 980, 982–83 (Tex.Civ.App.—El Paso 1935, writ dism'd). In another case cited by appellant, a suit was instituted by an heir to recover property on behalf of an estate. *See Daniel v. Mayer*, 213 S.W.2d 753, 755 (Tex.Civ. App.—Fort Worth 1948, no writ). In the present case, however, Abraham and Alicia Rodriguez are neither suing Sandra Rodriguez's estate in an attempt to establish their claim to certain property, nor are they suing to collect a debt owed to the estate.

The only case cited by appellant remotely lending support for its argument on appeal is *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex.1971), in which the supreme court concluded that it was necessary for an heir at law suing only in that capacity to plead and prove no administration of the decedent's estate was pending and that none was necessary to collect breach of contract damages for an estate. The court found that two or more debts were owed to the estate and thus an administration was necessary. Having failed to plead and prove an administration was not necessary, the case was reversed against the heir. *Id.* at 753.

We find *Frazier* inapplicable to this case. In *Frazier* the supreme court imposed the burden of pleading and proving certain facts because ordinarily only the personal representative of the estate can recover property for the estate and thus an heir, who merely sues as an heir, must first establish no administration is pending and that none was necessary before his own case can ensue within the time allowed for an administration. The case at bar differs from *Frazier* in that Abraham and Alicia Rodriguez are suing as the personal representatives of Sandra Rodriguez's estate and not exclusively as heirs at law. This case also differs in two other respects. Appellees already urged in their pleadings that no administration of Sandra Rodriguez's estate was pending, thus meeting the first burden of *Frazier*, assuming they were only suing as heirs at law. In addition, the court in *Frazier* held that the existence of several debts owed to the decedent's estate raised the possibility that an administration was necessary, thus requiring the suing heir to show the court that one was not necessary. Here, no evidence exists suggesting that two or more outstanding debts are owed to Sandra Rodriguez's estate, which would require the suing heir to negate the need for an administration.

◼ Moreover, we note that appellant correctly states the supreme court held standing may be reviewed for the first time on appeal in *Texas Association of Business v. Texas Air Control Board*. We believe the case controls here, although appellant invoked the case for a different argument. The issue of standing arose in *Texas Association of Business* because the standing of the party bringing a declaratory judgment action was not "readily apparent" to the supreme court. 852 S.W.2d at 443. The supreme court noted that when the issue of standing arises at the trial court level, it is sufficient to review the pleadings alone to determine whether the plaintiff has alleged jurisdictional facts. *Id.* at 446. If the pleadings are defective, the plaintiff may amend his pleadings to cure the defect. *Id.* On appeal, however, the plaintiff enjoys no such opportunity to amend his pleadings. Thus, when standing is reviewed for the first time on appeal, the appellate court "must construe the pleadings in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing." *Id.* In the case before us, we find it unnecessary to delve into the body of the record to determine whether standing exists because jurisdictional facts were adequately set forth in

the pleadings by the appellees. Appellees specifically stated that they were Sandra Rodriguez's parents, that no administration of her estate was taken, that no administration was necessary, and that they sued as the personal representatives of her estate. The question of standing was "readily apparent" and did not have to be established by additional evidence.

Finally, we note that appellant complains about inconsistent and mutually exclusive positions in appellees' pleadings. If the petition contains any contradictory assertions, we are unable to determine whether appellant sufficiently attacked the pleadings on this basis since no special exceptions were found in the record. Therefore, we must construe the pleadings in favor of the pleader and conclude they sufficiently alleged that appellees were suing as the representatives of Sandra Rodriguez's estate. *See Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982); *cf. Texas Ass'n of Business,* 852 S.W.2d at 446. These points are overruled. Aside from our review of these three points, we deny the remainder of the motion for rehearing.

On rehearing, appellees insist that appellant be sanctioned under Texas Rule of Appellate Procedure 84. Although the court found it necessary to request rebriefing from the appellant on rehearing, we find that sanctions are not proper under the attending circumstances. The judgment is modified by reducing $134,109.59 from the total award. The judgment in favor of appellees is affirmed in all other respects.

RICKHOFF, Justice, concurring.

The Court's opinion is well-researched and attempts to follow established case law. The evidence from the trial supports the jury's findings only if we are correctly interpreting the ill-defined standard for reviewing the actions of municipal officials. The difficulty begins with separate rules of recovery of exemplary damages based on classifications of tortfeasors as set forth in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex.1981). *See also* TEX.CIV.PRAC. & REM. CODE ANN. §§ 41.001–.009 (Vernon Supp.

1993); *City of Gladewater v. Pike,* 727 S.W.2d 514 (Tex.1987). In the former, a plaintiff need only show a defendant knew the peril but did not care in suits involving corporations, while in the latter, a plaintiff must show at least that amount of conscious indifference which would "tend to show malice or evil intent" when examining the actions of municipal officials. The *Gladewater* standard should be revisited, better-defined and become the sole standard for all Texas tortfeasors. Acts, or as in this case inaction, which tend to show malice, supported by clear and convincing evidence, should be required to accompany the actions of all tortfeasors in Texas before punitive damages can be awarded.

The difficulty with applying the standard begins when the court in *Gladewater* progressively elevates the gross negligence standard for municipal officials. The opinion begins by stating their review of Texas cases reveals the following rule: "As a general rule a municipality may not be held liable for exemplary damages; however, if the plaintiff can show that there is intentional, willful, or grossly negligent conduct which shows an entire want of care to his rights" one may award punitive damages. *Gladewater,* 727 S.W.2d at 522. The court then adopts the vague either/or test used by the Fifth Circuit in *Peace v. City of Center,* 372 F.2d 649 (5th Cir.1967). There the court held that liability will result only if it is "pleaded and proved that the acts giving rise to the claim were committed with such malice or evil intent, or such gross negligence as to be equivalent to such intent." *Id.* at 650. Is malice required or not? Then the opinion states the test: "Thus, in order to recover the plaintiff must show at least that amount of conscious indifference **which would tend to show** malice or evil intent on the part of the actor." Although I'm not sure of the meaning of the "evil intent" option, this record could support a jury award under this "tends to show" or, as this trial judge charged, "so as to indicate" standard. *Gladewater* continues by making the rule apply to "exceedingly few situations where the actions of persons in authority show utter disdain for the protection of the citi-

zens' rights." The pleadings, evidence, charge, and award are supportable under this standard. Then we come to the final statement of the test, "To reiterate: Unless the plaintiff can show intentional acts **which show** maliciousness or evil intent, ... no exemplary damages can be awarded." Does this mean the evidence in the instant case must show city officials were so malicious or so full of evil intent that they intended to drown citizens?

The trial judge attempted to satisfy the *Gladewater* standard when considered in the context of the full opinion. The jury was required by the charge to follow the two-prong *Gladewater* test and identify individual city officials and then allowed to find whether their acts were intentional, willful, wanton or grossly negligent "so as to indicate" maliciousness or evil intent.

The facts here are far more compelling than *Gladewater*, where the court reversed the punitive damage award because the only act of negligence was the failure to keep burial records. The Supreme Court of Texas surmised future plaintiffs would not be able to meet their newly established "exceedingly difficult" burden. This jury, however, found sufficient facts, though they charged the deceased with 25% of the blame. While the plaintiffs are entitled to have the evidence and all reasonable inferences which can be drawn from it viewed in the light most favorable to this verdict, there must nevertheless be evidence in the record to satisfy the *Gladewater* standard.

The record here reflects that successive city administrations decided their citizens should learn to tolerate major intersections covered by fast-moving high water during common annual rainfalls and they should learn to resist the temptation to drive into them. The record demonstrates this assumption ignored quickly rising water and human nature not to mention the visitors the city cultivates who are invincibly ignorant of this danger.

Significant, if not determinative, testimony was provided by Henry Cisneros who acknowledged he was the city's mayor from 1981 to 1989 and the councilperson from 1975 to 1981 in the district where the drowning occurred. He testified the city was prone to flooding, and, "For many years, the city was relatively inattentive.... The intersection in question certainly was one that was a regular flooding place ... Our Public Works staff knows pretty well what areas are going to flood in advance because ... they're the same areas year in and year out.... The rainfall is predictable; the threatened sites are predictable." His testimony was tantamount to confessing error on behalf of the city and is fairly cumulative of the plaintiff's case. The record taken as a whole supports the award of punitive damages, unless the Supreme Court of Texas in *Gladewater* meant plaintiffs must prove these officials intentional acts "show" maliciousness or evil intent. That would be tantamount to showing they intended to drown citizens. That has not been shown and would indeed be an exceedingly difficult burden. Because I construe the *Gladewater* opinion as entirely defined and not as finally defined I affirm the award. More precisely, at the risk of becoming lost in *Gladewater's* semantics, I find the evidence falls between "tending to show" and "shows" malice and evil intent.

## TEXAS MULTIPLE TORTFEASORS UNDER GLADEWATER

The vague, subjective, arbitrary, shifting standard of fault found in the Texas common law system for awarding punitive damages is difficult enough to apply and review without *Gladewater* further blurring the standard for each tortfeasor. Public officials and publishers enjoy "an exceedingly difficult" to meet standard while corporations and automobile operators suffer under an exceedingly easy to meet standard.

Without retracing the historical development of gross negligence from the time when it was founded upon criminal behavior and intent, as the court did in *Burk Royalty*, or restating the two-prong standard for punitive damages from *Gladewater*, I would simply ask if municipal corporations should enjoy a different standard of care than any other corporation before pu-

nitive damages may be awarded. If it is simply because taxpayers pay rather than customers it could be as logical to assume taxpaying jurors would be more careful when they can more clearly identify with the payor, a reaction demonstrated by this jury. If deterrence is the reason, our voter- and media-regulated democracy causes municipal officials to often suffer the consequences of their omissions, at least to the same degree as corporate officials who cannot as easily be removed from policy-making positions. In the 1990s in Texas individuals do not personally pay punitive damages so as to be deterred. The payors are those peers in the actor's insurance pool. What is the justification for exposing private corporations and not municipalities? The distinction between building autos or roads should not justify a different standard. Municipalities, insurers and auto manufacturers all employ or serve the same citizens whose potentially negative acts can injure other citizens in their day-to-day lives, whether they manufacture or insure automobiles as private corporate officials, or as municipal officials, or build roads upon which these citizens ride. Indeed, it is often just as ruinous for a community to loose a major employer to an unreasonable punitive damage award as it is to open the replenishable city treasury. Therefore, if there no longer exists a logical public policy reason for the distinction, all Texas tortfeasors, public and private, should be judged by the same standard when punitive damages are awarded, a standard that includes the identification of an official, whose action tended to show malice, all supported by clear and convincing evidence. The facts of this case support even this elevated new standard.